# EXHIBIT B

**NFN8 HOLDINGS**

## LEASE AGREEMENT

This Lease Agreement ("**Lease Agreement**") is dated May 20th, 2024 (the "**Effective Date**"), by and between NFN8 Holdings, LLC, a Nevada limited liability company, ("**HOLDINGS**" or the "**Lessee**") and the other person or entity who has executed this Lease Agreement ("**Lessor**").

### RECITALS

A. Lessor owns designated equipment as described on Schedule A hereto ("**Equipment**"), which is part of the Lease Agreement. Lessor possesses the obligation of NFN8 Capital, LLC ("**Capital**") to service the Equipment. The Equipment was purchased pursuant to a Purchase and Services Agreement with Capital dated of even date herewith (the "**Purchase Agreement**").

B. HOLDINGS desires to lease 100% of the Equipment and the equipment processing output capacity of the Equipment (the "**Capacity**") from the Lessor and the Lessor desires to lease such Equipment and Capacity to HOLDINGS pursuant to the terms and conditions of this Lease Agreement.

C. Lessor recognizes and acknowledges that it is leasing equipment designated by Capital and Capital has the right to upgrade or replace the Equipment to an equal or better version.

D. HOLDINGS will provide software (but not ownership), secure warehousing, monitoring, maintenance, upgrading and updating of the Equipment to ensure proper and continuous operation of the Lessor's Equipment.

NOW, THEREFORE, in consideration of the mutual covenants and conditions contained in this Lease Agreement, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties, HOLDINGS and Lessor agree as follows:

1. **LEASE**

   The Lessor agrees to lease to HOLDINGS and HOLDINGS agrees to lease from the Lessor 100% of the Equipment and the Capacity. The Lessor will be paid a fee (the "**Lease Fee**") for a total lease term of 40 months (the "**Lease Period**"). The Lease will be treated as a financing agreement for tax purposes. The Lease Fee will be paid in equal monthly installments (each such monthly payment, a "**Lease Fee**") by deposit to the Lessor's bank account (bank name and account number supplied by the Lessor). The Lease Fees are set forth in Schedule B hereto. The payments shall begin from the date that the Equipment and Capacity are available and ready for operation, (the "**Commencement Date**"). HOLDINGS will pay the Lessor the Lease Fees by the end of the final week of every month for the 40-month period that payments are required to be made under this Lease Agreement. The Lease Fee shall continue to be paid until all payments due have been paid; provided, however, if the Lease Agreement is terminated due to the actions or inactions or fault of Lessor, such payments shall cease immediately.

2. **END OF LEASE**

   At the end of the Lease Period, Lessor shall have the right to claim or not claim the Equipment. The Lessor must notify Lessee of its intention to claim or not claim the Equipment at least 30 days

20240126

**NFN8 HOLDINGS**

prior to the end of the Lease Period. Upon such notice, Lessee shall arrange to ship (at Lessee's expense) or return the Equipment to the Lessor or if the Lessor does not claim the Equipment, HOLDINGS will be obligated to purchase each Mining Farm bought by Lessor and leased by Lessee for the amount of $20,000.00 per item of equipment.

3. **FORCE MAJEURE.**

   Neither HOLDINGS nor Lessor shall be liable to the other for failure to perform its obligations under this Lease Agreement if prevented from doing so because of an Act of God, strike, fire, terrorism, flood, war, civil disturbance, interference by civil, government, or military authority, pandemic or other causes beyond the reasonable control of the party. Upon the occurrence of such an event the party seeking to rely on this provision shall promptly give written notice to the other party of the nature and consequences of the event.

4. **NOTICES.**

   All notices and other communications under this Lease Agreement must be in writing and must be given by facsimile, email, or first-class mail, certified with return receipt requested, and will be deemed to have been duly given 24 hours after transmission of a facsimile or email, or three (3) days after mailing, to the respective persons and entities named following this paragraph. Either party may change its address, telephone number, facsimile number, email address, or contact name by providing notice thereof to the other party in the manner specified above.

   **If to NFN8 Holdings, LLC**:
   13809 Research Blvd.
   Suite 785
   Austin, TX 78750
   Fax: (512) 857-8176
   office@nfn8.com

   *If to Lessor*:
   At the address and telephone number set forth below Lessor's signature.

5. **LIMITATION OF LIABILITY**.

   THE PARTIES AGREE THAT IT IS IMPOSSIBLE TO DETERMINE WITH ANY REASONABLE ACCURACY THE AMOUNT OF DAMAGES TO LESSOR UPON THE BREACH BY HOLDINGS OF ITS OBLIGATIONS HEREUNDER AND THE PURCHASE AND SERVICES AGREEMENT. THE AMOUNT OF DAMAGES SHALL BE DEEMED TO BE LIQUIDATED DAMAGES, AT THE SOLE ELECTION OF HOLDINGS (a) IN THE AMOUNT OF $30,000 PER ITEM OF EQUIPMENT LEASED LESS ANY PAYMENT PAID UNDER THIS LEASE AGREEMENT OR THE PURCHASE AGREEMENT OR (b) THE RETURN OF THE EQUIPMENT TO LESSOR. THE OBLIGATIONS SET FORTH HEREIN UNDER THIS LEASE AGREEMENT AND THE PURCHASE AGREEMENT SHALL BE IN THE AGGREGATE AND NOT CUMULATIVE AND CAN ONLY BE COLLECTED ONCE AND NOT SEPARATELY UNDER BOTH AGREEMENTS. LESSOR HEREBY WAIVES ALL OTHER CLAIMS FOR DAMAGES OF ANY KIND AGAINST HOLDINGS, ITS MEMBERS, MANAGERS, SHAREHOLDERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS, AGENTS, REPRESENTATIVES OR AFFILIATES, INCLUDING, WITHOUT LIMITATION, ANY CLAIMS FOR ANY LOSS OF USE, INTERRUPTION OF BUSINESS OR ANY INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES OF ANY

20240126

**NFN8HOLDINGS**

KIND (INCLUDING WITHOUT LIMITATION, LOST PROFITS), REGARDLESS OF THE FORM OF ACTION WHETHER IN CONTRACT, TORT, STRICT PRODUCT LIABILITY OR OTHERWISE. LESSOR AND HOLDINGS AGREE THAT THE LIQUIDATED DAMAGES SET FORTH ABOVE ARE REASONABLE AND NOT A PENALTY BASED ON THE FACTS AND CIRCUMSTANCES OF THE PARTIES AT THE TIME OF ENTERING INTO THIS LEASE AGREEMENT WITH DUE REGARD TO FUTURE EXPECTATIONS. THESE LIQUIDATED DAMAGES AND THOSE UNDER THE PURCHASE AGREEMENT ARE NOT ADDITIVE; THEY SHALL ONLY BE PAID UNDER THIS AGREEMENT OR THE PURCHASE AGREEMENT, NOT UNDER BOTH AGREEMENTS.

6. **GOVERNING LAW**.

This Lease Agreement and any dispute arising from or in connection with this Lease Agreement shall be interpreted under and governed by Texas law, without regard to conflict of laws principles.

7. **BINDING ARBITRATION.**

HOLDINGS and the Lessor agree any dispute, claim or controversy arising out of or relating to this Lease Agreement or the breach, termination, enforcement, interpretation, or validity thereof, including the determination of the scope or applicability of this Lease Agreement to arbitrate, shall be determined by arbitration in Dallas, Texas before one arbitrator. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules. Judgment on any award may be entered in any court having jurisdiction. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.

8. **WAIVER**.

The failure of either party to insist upon the performance of any obligation or term of this Lease Agreement or to exercise any right hereunder shall not constitute a waiver of that obligation or term. No waiver of any right or obligation under this Lease Agreement shall be effective unless in writing and signed by both parties.

9. **ACKNOWLEDGEMENT**

(A) In accordance with the rules and regulations promulgated by the U.S. Securities and Exchange Commission (the "**SEC**"), the interest acquired through the execution of this Lease Agreement and the Purchase Agreement as described in an Executive Summary relating to this transaction which has been previously delivered to Lessor (the "**Executive Summary**") is deemed to be a "security" as such term is defined in the Act. As a result, such interest is subject to the SEC's rules and regulations governing securities.

(B) The Lessor is not entitled to any revenues, royalties, or profits from Lessee or from any use or product generated by the Lessee or the Equipment.

(C) By leasing the Equipment, the Lessor is not mining or purchasing cryptocurrency.

(D) This Lease Agreement creates no employment, relationship of joint venture, partnership, limited partnership, fiduciary, or agency between the parties and the parties hereby acknowledge that no other facts or relations exist that would create any such relationship between them.

(E) Lessor acknowledges and agrees that all service obligations of Capital under the Purchase Agreement will be assumed by HOLDINGS immediately upon execution of this Lease

3

20240126

**NFN8 HOLDINGS**

Agreement and the simultaneous execution of the Purchase Agreement. Lessor will no longer look to Capital to perform or be liable for such service obligations.

(F) HOLDINGS, at its discretion, shall be able to upgrade or replace any portion of the Equipment on the terms and conditions set forth in the Purchase Agreement, as held by Capital. HOLDINGS will perform any and all service obligations on the replaced equipment as HOLDINGS was obligated to do on the original leased equipment.

10. **SUCCESSORS AND ASSIGNS**.

This Lease Agreement shall inure to the benefit of and will be binding upon and enforceable by the parties and their respective heirs, representatives, successors and permitted assigns; provided that Lessor cannot assign its rights under this Lease Agreement without the prior written consent of Lessee, which consent may be withheld for any reason.

11. **ENTIRE UNDERSTANDING; AMENDMENT**.

This Lease Agreement and the schedules attached hereto, the Purchase Agreement and the Executive Summary constitute the entire understanding and agreement between the parties with respect to the subject matter set forth in this Lease Agreement and supersede any and all prior agreements, understandings, promises, conduct and representations made concerning the subject matter of this Lease Agreement. This Lease Agreement may only be amended in writing, signed by each party to this Lease Agreement.

12. **COUNTERPARTS; ELECTRONIC SIGNATURES**.

This Lease Agreement may be executed in counterparts, each of which taken together shall constitute an original, single, binding agreement between the parties. Any signature of a party required by this Lease Agreement may be transmitted to the other party via facsimile or other electronic transmission and such facsimile or electronically transmitted signature shall be deemed an original signature binding upon the signing party for all purposes.

13. **ATTORNEYS' FEES AND COSTS**.

In the event that either party must resort to legal action in order to enforce the provisions of this Lease Agreement or to defend such action pursuant to the arbitration provisions set forth in paragraph 8 above, the prevailing party will be entitled to receive reimbursement from the non-prevailing party for all reasonable attorneys' fees and all other costs incurred in commencing or defending such action, or in enforcing this Lease Agreement, including but not limited to post-judgment costs.

14. **SEVERABILITY**.

If any term, provision, covenant, or condition of this Lease Agreement is found to be invalid, void, or unenforceable by any court of competent jurisdiction or arbitrator, the remaining provisions hereof will continue in full force and effect and will in no way be affected, impaired, or invalidated.

15. **SURVIVAL**.

Sections 3, 5, 6, 7, 9, 10, 11, 13, 14, and 15 of this Lease Agreement will survive the expiration, termination, or cancellation of this Lease Agreement.

# NFN8 HOLDINGS

**IN WITNESS WHEREOF**, the parties have caused this Lease Agreement to be executed on the date first written above.

**NFN8 Holdings, LLC, a NEVADA limited liability Company**

Name: _Josh Moore_

Title: _CEO_

Signature: _[signature]_

Date: _05/24/2024_

**LESSOR**

**M-M WHS LLC**

_Justin Lo_  5/21/2024

Signature: Justin Lo

Address: 2101 Forest Ave #220., San Jose, CA 95128

Phone Number: (650) 280-0816

Email: justin@justinlomd.com

Social Security # / Tax ID: 85-3510237

20240126

5

**NFN8**HOLDINGS

# SCHEDULE A
## LEASED EQUIPMENT

**YOUR LEASE CONSISTS OF EQUIPMENT DESIGNATED BY
NFN8 CAPITAL, LLC IN THE FOLLOWING EQUIPMENT PACKAGE:**

**FIFTY (50) EQUIPMENT**              **SERIAL NUMBER**
Infinite Miner(s)         Issued under corresponding Customer Number

**EACH MINER INCORPORATES COMPONENTS BELOW**

**AS DETAILED IN THE PURCHASE AGREEMENT**

*HARDWARE*

CUSTOM MINING SERVER SETUP
HIGH-GRADE ALUMINUM CASING
CPU RACK WITH MULTIVARIATE OUTPUTS – MULTIPLE NODES
SHA 256 MICROPROCESSORS
APPLICATION SPECIFIC INTEGRATED CIRCUIT CHIPS
COMPUTER CONTROLLED FANS FOR COOLING AND HEAT DISSIPATION
PCI SLOTS
POWER ADAPTERS
INCOMING POWER MANAGEMENT CONTROLLERS
CUSTOMIZED POWER MANAGED CONNECTING CABLES
PROPRIETARY MANAGED DASHBOARD
CONNECTORS FOR MONITORS

*SOFTWARE AND FIRMWARE*

CUSTOM FIRMWARE FOR END USER INTERFACE, WALLET POOL MANAGEMENT
THERMAL LOAD MANAGEMENT SOFTWARE
PROPRIETARY COOLING SOLUTION SOFTWARE
METERING AND MONITORING CHIP EFFICIENCY SOLUTION SOFTWARE
PROPRIETARY THERMAL LOAD MANAGEMENT
PROPRIETARY MINING EQUIPMENT SOFTWARE
PROPRIETARY MULTI-SOFTWARE

6

20240126

# NFN8 HOLDINGS

## SCHEDULE B

### LEASE FEE DETAILS

NFN8 Holdings will pay the Lessor the Lease Fees by the end of the third week of every month for the 40-month period that payments are required to be made under this Lease Agreement. Lease Fees are paid on the following schedule beginning 30 days after the Commencement Date. These fees are paid directly into the Lessor's (supplied) bank account.

**LEASE FEES FOR ONE (1) MINING FARM**

| *PAID EACH MONTH FOR 40 MONTHS* |
| --- |
| **$600.00** |
| **TOTAL INTEREST PAID FOR 40 MONTHS** |
| **$24,000.00** |

To determine the total Lease Fees payable for any applicable period multiple the number of Mining Farms purchased (50) times the amounts set forth on the above chart.

7

20240126