UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MOBILE MED WORK HEALTH SOLUTIONS, INC., et al., § § § | | |
| Plaintiffs, § § | | |
| v. § | | 1:24-CV-1219-RP |
| JOSHUA MOORE, et al., § § § | | |
| Defendants. § | | |

**ORDER**

Before the Court is Plaintiff Mobile Med Work Health Solutions, Inc., Plaintiff JLL Ventures, Inc., and Plaintiff M-M WHS, LLC's ("Plaintiffs") Motion for Entry of a Temporary Restraining Order. (Dkt. 2). On October 11, 2024, the parties participated in a hearing on Plaintiffs' motion. (Min. Entry, Dkt. 8). After considering the motion, the supporting evidence, and the relevant law, the Court finds that the motion should be denied.

**I. BACKGROUND**

Plaintiffs allege that Defendants fraudulently induced them to invest over $10 million in nine separate sale-leaseback transactions under which Plaintiffs purchased cryptocurrency mining machines ("miners") from Defendants, then leased those miners back to Defendants in exchange for the proceeds that Defendants would generate from the mining activity. Plaintiffs received timely payments from Defendants from 2021 to mid-2024. (Mot. TRO, Dkt. 2, at 4). In May 2024, two months before Defendants were required to make their first lump-sum return-of-principal payment, Defendants contacted Plaintiff's principal, Dr. Justin Lo ("Lo"), about investing another $1 million to buy additional miners. (*Id.* at 11). Defendant Cory Rodriguez ("Rodriguez") claimed that this was a strategic investment because there historically had been a six-to-eighteen-month "lag" before Bitcoin prices increased after a Bitcoin "halving," which had just happened the previous month.

1

(*Id.*). Rodriguez argued that less efficient miners would be dropping out of the market until the price of Bitcoin rose again and indicated that Defendants were attempting to maximize the number of efficient miners they were operating, to take advantage of the temporary reduction in competition. (*Id.*)

Dr. Lo was initially skeptical because he felt that Plaintiffs had already invested enough in Defendants' securities. (*Id.*). He also expressed concerns about the timing of the request, stating that he was not interested in investing if the investment would simply provide Defendants with most of the funds they would need to repay Plaintiffs their principal investment in July. (*Id.*). In response, Rodriguez assured Lo that Defendants were not soliciting a "round-trip" investment, and that to do so would be a "Ponzi scheme." (*Id.*). This reassurance, as well as a higher promised rate of return, convinced Lo to invest an additional $1 million with Defendants on May 24, 2024. (*Id.*).

On July 19, 2024, Defendants Joshua Moore ("Moore") and Rodriguez called Lo to request a three-month forbearance on their payments due to cash-flow problems. (*Id.* at 12). Moore and Rodriguez claimed that Defendants were currently operating only 40-50% of their existing miners because they were building new facilities to house their miners, which made Lo doubt that Plaintiffs' $1 million investment was actually used to purchase new miners. (*Id.* at 13). When Lo asked Moore and Rodriguez to detail Defendants' monthly costs for the purported buildouts, they refused. Lo did not agree to the requested forbearance, and Defendants defaulted on both their principal repayment and their monthly lease payments. (*Id.*). Plaintiffs have received no payments from Defendants since. (*Id.*).

Shortly after, Plaintiffs retained counsel to investigate Defendants' business. (*Id.*). During the investigation, Plaintiffs were given further reason to doubt that Defendants had used the $1 million investment to purchase miners as promised. Specifically, Moore admitted in a September 2024 call with Plaintiffs that Defendants "had not purchased very many miners since Plaintiffs' May 2024

2

investment." (*Id.*). And Defendants never provided Plaintiffs with Bills of Sale or serial numbers for the miners they were supposed to have purchased. (*Id.* at 14).

Based on these allegations, Plaintiffs assert causes of action against Defendants for (1) violations of the Texas Uniform Transfer Act ("TUFTA"), Tex. Bus. & Com. Code § 24.001, *et seq.*; (2) violations of section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j(B), and Rule 10b-5; (3) untruth or omission under Texas Government Code section 4008.052(A); (4) control person liability under Texas Government Code section 4008.055(A) against Defendants Moore and Rodriguez; (5) civil conspiracy to defraud under Texas law; (6) fraud under Texas law; (7) negligent misrepresentation under Texas law; (8) civil violations of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(C); (9) conspiracy to commit civil violations of RICO, 18 U.S.C. § 1962(D); (10) conversion under Texas law; and (11) unjust enrichment under Texas law. (*Id.* at 45–59).

On the same day they filed their complaint, Plaintiffs filed this motion for a temporary restraining order ("TRO"), in which they ask the Court to freeze Defendants' assets pursuant to (1) the Texas Uniform Fraudulent Transfer Act ("TUFTA"); and (2) the Court's general equitable powers. (*Id.* at 2). Plaintiffs argue that this remedy is necessary to prevent Defendants from dissipating assets that could be used to compensate Plaintiffs in the event that Plaintiffs prevail on their claims. Plaintiffs also seek an inventory of Defendants' physical assets, immediate inspection of Defendants' facilities, and identification of Defendants' cryptocurrency wallets. On October 11, 2024, the Court held a hearing on Plaintiffs' motion, where both parties presented their arguments.

## II. LEGAL STANDARD

The party moving for a TRO must establish that: "(1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the

defendant; and (4) the granting of the [TRO] will not disserve the public interest." *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). "A [TRO] is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008) (citation and quotation marks omitted).

### III. DISCUSSION

Upon reviewing Plaintiffs' motion, the Court concludes that Plaintiffs have failed to demonstrate (1) that irreparable harm will likely result if a TRO is not granted and (2) the threatened injury outweighs the threatened harm to Defendants.[1]

### A. No Irreparable Harm

Plaintiffs argue that Defendants' conduct in recent months suggests they have dissipated and are likely to further dissipate and waste assets in response to Plaintiffs' suit. (Mot. TRO, Dkt. 2, at 6–7). Plaintiffs argue that Defendants' dissipation would leave Defendants unable to able to pay back the money they allegedly owe. The Court finds these facts insufficient to establish irreparable harm in the absence of a TRO. (*Id.*).

To meet its burden to show irreparable harm, a movant must show that "irreparable injury is *likely* in the absence of an injunction." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original). Additionally, the plaintiff must show that the irreparable injury will occur "during the pendency of the litigation" without the TRO. *Justin Inds., Inc. v. Choctaw Secs., L.P.*, 920 F.2d 262, 268 n.7 (5th Cir. 1990). Plaintiffs offer no reason for the Court to believe that Defendants have or will imminently dissipate their assets. Defendants defaulted on their loans in July, and, as both parties represented in the hearing, have since engaged with Plaintiffs to work out potential solutions, including the possibility of Defendants granting Plaintiffs a security interest in their assets.

---

[1] Because Plaintiffs have not carried the burden of persuasion on the second and third factors, the Court declines to address the other two.

If Defendants planned to dissipate, they could have done so in the three months after their default. In fact, they could have simply defaulted on their obligations and dissipated without first asking for forbearance. Plaintiffs have not indicated any change in circumstances that explains why a TRO is now necessary. And although Plaintiffs offer Defendants' alleged misrepresentations as evidence of dissipation, (Mot. TRO, Dkt. 2, at 23–24), these misrepresentations go to Plaintiffs' arguments on the merits, rather than establish that Defendants have or will dissipate. Plaintiffs have offered little evidence to indicate that Defendants have actually dissipated any of the funds available to satisfy their obligations.

Plaintiffs finally argue that a TRO is necessary because (1) Defendant Moore and his wife's previous four bankruptcy filings, which did not result in discharge of their debts, indicate a history of hiding assets from government scrutiny; and (2) cryptocurrency is confidential and easily hidden. (*Id.*). However, this Court notes that a TRO is an "extraordinary remedy" and should not be granted lightly. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008) (citation and quotation marks omitted). Moore's history—as well as Lo's initial hesitation to invest the additional $1 million—should have given Plaintiffs reason to pause before engaging with Defendants. And though the Court acknowledges the sensitive nature of cryptocurrency transactions, Plaintiffs' concern that Defendants may dissipate assets is prevalent across a host of different fraud schemes. Plaintiffs have therefore failed to meet their "extraordinary" burden of establishing irreparable harm. *See Nichols*, 532 F.3d at 372.

**B. Threatened Injury Does Not Outweigh Threatened Harm to Defendants**

Plaintiffs have also failed to show that their "threatened injury outweighs the threatened harm to the defendant." *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). A freeze on Defendants' assets would substantially hamper their ability to conduct day-to-day business, potentially leading to

5

downstream effects that could hurt their business in the long term. Plaintiffs' lack of imminent injury does not outweigh this potential harm.

## IV. CONCLUSION

Because Plaintiffs have failed to make the showing necessary for this Court to enter a TRO, the Court will not enter Plaintiffs' requested relief at this time. **IT IS THEREFORE ORDERED** that Plaintiffs' motion for a temporary restraining order, (Dkt. 2), is **DENIED**.

In its motion, Plaintiffs also ask the Court to set a date for a preliminary injunction hearing and authorize expedited discovery. (*Id.* at 2). The Court will enter a separate order setting a phone conference for the week of October 15, 2024 to discuss scheduling, preliminary discovery, and any other matters relevant to Plaintiffs' request for a preliminary injunction and an associated hearing.

**SIGNED** on October 11, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE