# EXHIBIT B

| | |
|---|---|
| **From:** | Isaak, David |
| **To:** | Stancil, Paul; Pace, Chris |
| **Cc:** | Ram, Ashwin; Stewart, Shontel; asaathoff@winston.com |
| **Subject:** | RE: Meet and Confer |
| **Date:** | Monday, October 21, 2024 8:04:30 PM |
| **Attachments:** | image001.png |
| | 10.21.2024 Plaintiffs" Proposed Agreed Expedited Discovery.pdf |

Chris/Austin,

In advance of our next meet and confer, please see the attached revised list of information discovery requests. Please let us know if 11 am central will work for you for a conference. Otherwise, Paul and I are available any time before 930 or between 11 and 130.

Best regards,

David

**From:** Isaak, David
**Sent:** Monday, October 21, 2024 6:01 PM
**To:** Stancil, Paul <pstancil@steptoe.com>; Pace, Chris <CRJPace@winston.com>
**Cc:** Ram, Ashwin <aram@steptoe.com>; Stewart, Shontel <sstewart@steptoe.com>; asaathoff@winston.com
**Subject:** RE: Meet and Confer

Chris/Austin,

Just following up on this. It would be good to get this on the calendar for tomorrow. Thanks.

**From:** Stancil, Paul <pstancil@steptoe.com>
**Sent:** Monday, October 21, 2024 2:34 PM
**To:** Pace, Chris <CRJPace@winston.com>
**Cc:** Ram, Ashwin <aram@steptoe.com>; Stewart, Shontel <sstewart@steptoe.com>; asaathoff@winston.com; Isaak, David <disaak@steptoe.com>
**Subject:** Meet and Confer

Counsel: In light of the Court's ruling during today's status conference and both sides' stated desire to move the ball forward on this matter quickly, Plaintiffs propose that we meet and confer to determine whether the parties can agree to the scope of expedited discovery at 11:00 AM CT tomorrow. Please advise.

Thanks,
Paul

**Paul Stancil**
Of Counsel



Steptoe LLP | 717 Texas Avenue Suite 2800 | Houston, TX 77002
+1 713 221 2321 direct | +1 217 778 5806 mobile | pstancil@steptoe.com | www.steptoe.com  | Steptoe Bio

**10.21.2024 Proposed Agreed Discovery Requests to Defendants**

In light of both the Court's orders today and the results of Plaintiffs' continuing investigation, Plaintiffs offer this *revised* proposal for agreed expedited discovery.

In general terms, Plaintiffs ask that Defendants provide them with two categories of information—information regarding Defendants' core business model and operational history, and information regarding Defendants' financial performance and current financial condition.  Provision of the critical information in both categories is vital to any serious attempt to resolve Plaintiffs' claims.

Plaintiffs' business model and operational history requests are further subdivided into requests about (1) Defendants' mining activities; (2) the mining facilities they have used, are using, or plan to use in the future; (3) Defendants' cryptocurrency trading activities; and (4) Defendants' sale of Sale-Leaseback Securities and the financial obligations arising therefrom.

Plaintiffs' financial performance and financial condition requests are typical for a case of this type, focusing on Defendants' assets, liabilities, cash flow, organizational and ownership structure, and recurring expenses.

Plaintiffs expressly note that: (1) the level of detail requested is sufficient and necessary for Plaintiffs to obtain an accurate picture of NFN8's business and financial status in light of its repeated defaults and inconsistent explanations over time; (2) NFN8 should already maintain the overwhelming majority of the information requested in the ordinary course such that it should not be overly burdensome to assemble the requested material—much of which can be provided in spreadsheet form; (3) neither the information nor the documents Plaintiffs request will require Defendants to engage in a time-consuming traditional document review and production process; and (4) until an appropriate protective order is entered in this case, Plaintiffs' will treat all information produced as "Classified" under standard form Confidentiality and Protective Order promulgated by the Austin Division of the Western District of Texas, and will disclose such information to their clients only as needed in connection with the provision of legal advice.

**I.     Business Model and Operational History**

      **A.**    Mining Activities

      1. For the past four years, identify all branded ASIC mining machines NFN8 has owned or controlled.  For purposes of this request, "identify" includes, at minimum, the following information:

        a)    Brand and Model Number
        b)    Manufacturer Serial Number
        c)    Internal NFN8 control number, if different.
        d)    Whether purchased new or used (If all were purchased new, a categorical representation to that effect is sufficient)
        e)    Algorithm (*e.g.*, SHA-256, etc.)

       e)       Purchase and Delivery Dates
       f)       NFN8-related Purchasing Entity
       g)       Seller
       h)       NFN8's Purchase Price
       i)       Unit Ownership Status
              (1)      Sale-Leaseback
              (2)      Purchased for NFN8's own account
              (3)      Other (describe)
       j)       If not still owned/controlled by NFN8, disposition of the asset including date, sale price, and other relevant transaction data
       k)       If still owned/controlled by NFN8, current status (operational and operating, operational but not operating, non-operational)
       l)       Any customizations to firmware (does not include manufacturer firmware updates)

2.       For the past four years, for any GPU, FPGA, or customized mining machine(s), provide the information requested in (1) above and also identify:
       a)       To the extent not implicit in initial identification, identify whether the machine in question is a GPU, FGPA, or other customized mining machine;
       b)       The cryptocurrency or cryptocurrencies it could mine
       c)       Effective terahash rate
       d)       Rated operational power consumption

3.       Current and any past monitoring software used to monitor miners

4.       For the past seven years, identify all hosting facilities or locations associated with any cryptocurrency mining machine owned, operated, used, and/or planned by NFN8. For purposes of this interrogatory, "identify" includes, at minimum, the following information for each facility or location:
       a)       Physical address
       b)       Type of hosting arrangement (NFN8-owned, NFN8-controlled, colocation, etc.)
       c)       NFN8 operational date
       d)       If NFN8-owned or NFN8-controlled, maximum capacity, electricity vendor and electricity prices
       e)       If collocated or shared, name of host entity and hosting charge arrangements ($ per kW/h or however denominated in relevant contract, including any contractual volume or duration adjustments)

        f)      Number of operational NFN8-controlled machines hosted over time by quarter
        g)      Current status (NFN8 actively using or not)
        h)      If not actively in use by NFN8, stop date and reason for stoppage.
        i)      If currently under construction, identify:
            (1)      Ownership structure (NFN8 solo project, joint venture, etc., with percentages)
            (2)      Total expected NFN8 investment broken down by major category
            (3)      Whether the facility is currently hosting operational units and how many operational units are currently being hosted
            (4)      Firm or expected electricity costs per kWh (including name of provider, basic commercial terms of any contract or preliminary agreement)
            (5)      Expected completion date

B.      Trading Activities

1.      For the past four years, produce all cryptocurrency wallets (whether hardware, virtual/hot, or paper).

2.      To the extent not provided through your production in response to I.B.1 above, for the past four years, identify in detail your cryptocurrency mining and trading operations.  For purposes of this interrogatory, "identify" includes, at minimum:
        a)      The relevant cryptocurrency or cryptocurrencies mined (*e.g.,* BTC, ETH, Tether USDt, BNB, Solana, Dogecoin, etc.)
        b)      Whether NFN8 mined those cryptocurrencies alone, as part of mining pools, or both.
        c)      If NFN8 participates or participated in mining pools, identify both:
            (1)      all relevant pools; and
            (2)      NFN8's mining proceeds for each pool in which it has participated.
        d)      The quantity of each cryptocurrency NFN8 has mined alone, including the date(s) and amount(s) of any award(s) from the relevant cryptocurrency promoter.
        e)      To the extent not captured fully by c) and d) above, the total amount of each cryptocurrency NFN8 has received from mining activities, listed by currency.
        f)      All cryptocurrency exchanges or trading platforms on which NFN8 has or had a trading account (*e.g.,* Kraken, Pionex, Binance, Coinbase Exchange, etc.).

  g) A full record of NFN8's trading activities, including a list of all transactions (including platform, currency, quantity, date, and trade price) and all transaction fees paid, however denominated.

 C. Sale-Leaseback Activities

  1. Produce the following transactional documents associated with each Sale-Leaseback transaction from 2018 to present:
   a) Purchase agreement;
   b) Lease agreement; and
   c) Bill of Sale

  2. Identify the additional key commercial terms of each Sale-Leaseback or functionally similar security NFN8 has sold at any time from 2018 to present, including:
   a) The manufacturer's serial number of each miner actually purchased on the investor's behalf;
   b) The internal NFN8 control number, if any, of each miner actually purchased on the investor;
   c) The term of the lease agreement (including start and end date);
   d) For expired leases only, the ultimate disposition of the mining units (repurchased by NFN8 or returned to investor)

 D. For the past four years, identify any and all sale-leaseback investors who are currently or who have ever been clients of New Standard IRA, LLC.

 E. Identify all miners sold by BlockOverstock.com, including make/model, serial number, date of sale, and sales price **[If Defendants have sold all miners listed as sold in response to I.A.1.j. above through BlockOverstock.com *and* if BlockOverstock.com has sold no miners during the relevant time period *other* than those listed in response to I.A.1.j. above, Defendants can fully respond to this request by so noting.]**

II. <u>Financial Performance and Current Financial Condition</u>

 A. Financial statements—indicating whether audited or unaudited—for all NFN8 entities, Moore and Rodriguez for the past four years, including:
  1. P&L's
  2. Balance Sheets
  3. Statements of Cash Flows

 B. For the business entity defendants and NFN8 or NFN8-related entities which are not named Defendants in this matter, a list of all shareholders and the percentage ownership of each shareholder.

C. For the individual Defendants, a list of all non-NFN8 business entities in which they have an ownership interest of any type (including the general nature of the business, the percentage of the individual Defendant's ownership interest and the identity of any co-owners).

D. For the past four years, bank statements for all accounts for each of:

 1. The business entity Defendants;
 2. Any other NFN8 or NFN8-related entities not currently named Defendants in this matter; and
 3. Defendants Moore and Rodriguez

E. Documentation for all indebtedness of any of the entities or individuals identified in response to II.D above.

F. A list of all real property owned by any of the entities or individuals identified in response to II.D. above, including the following information:
 1. Description
 2. Purchase price
 3. Value and basis for said value (tax value/appraisal, etc.)
 4. Any mortgage, liens, or other encumbrances on the property (including outstanding amounts owed where applicable).

G. Information sufficient to determine the enterprise's recurring expenses including but not limited to:
 1. Salaries, average commissions, fees, etc. paid to non-Defendant employees, independent contractors and others.
 2. Rent/lease payments for non-mining facilities (office space, warehousing, etc.)
 3. Other overhead by category.

H. A list of all distributions made to Moore and Rodriguez by any of the NFN8 entities in the last four years (including without limitation salaries, shareholder distributions, and loans to shareholders).

I. For the tax years 2020-2023, all federal and/or state income or franchise tax returns filed by any Defendant other than Joshua Moore or Cory Rodriguez, including any and all amended returns.

J. A list fully identifying all accountants or bookkeepers (whether certified public accountants or otherwise) employed or retained by any entity or individual identified in response to II.D. above for the past four years including:
 1. Contact information

      2.      Nature of engagement (employee, in-house independent contractor, retained outside accountant, etc.)
      3.      Responsibilities/nature of duties
      4.      Dates of employment/retention

**<u>Depositions and Site/Equipment Inspections</u>**

In addition, in light of the additional evidence of misconduct that has come to light, Plaintiffs request that the Defendants agree to provide Josh Moore and Cory Rodriguez for an in-person deposition not to exceed **four** hours of examination per witness. Plaintiffs also request that Defendants agree to the deposition of NFN8 accountants to be identified by Defendants.

Finally, Plaintiffs request that Defendants permit counsel for Plaintiffs and their designee to inspect all facilities in which Defendants currently house or plan to house cryptocurrency miners, regardless of whether such facilities are currently operational. Plaintiffs' inspection would include the right to inspect all individual miners in Plaintiffs' possession, custody, or control, regardless of their ownership or operational status.