IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| MOBILE MED WORK HEALTH SOLUTIONS, INC.; *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> JOSHUA MOORE; *et al*., <br><br> *Defendants*. | CIVIL ACTION NO. 1:24-CV-01219-RP |

## DECLARATION OF JOSHUA MOORE IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

I, Joshua Moore, pursuant to 28 U.S.C. § 1746, hereby make this declaration in support of Defendants' Motion to Compel Arbitration, filed on October 29, 2024, and state as follows:

1. I am a defendant in this action and have personal knowledge of the facts stated in this declaration.

2. If called to testify, I could and would testify about the information set forth in this declaration. I am over 18 years of age and competent to give this statement based on my personal knowledge, information, and belief.

3. I am the Chief Executive Officer of NFN8 Group, Inc. ("Group").

4. In my role as CEO of Group, I have access to documents kept by the NFN8 Entities (described further below) in the regular course of their business, including documents related to sale-leaseback arrangements to which NFN8 Entities are parties.

5. The NFN8 Entities keep documents related to sale-leaseback arrangements in digital format.

### NFN8 Entities

6. Group is a Nevada corporation created in November 2020.

7. I have served as Group's Chief Executive Officer from 2020 to present.

1

8. Cory Rodriguez has served as Group's Chief Operating Officer from 2020 to present.

9. Group is the sole member of NFN8 Holdings, LLC ("Holdings"), which is a Nevada limited liability company formed in August 2023. *See* Ex. 1 at 5.

10. CryptoTech Holdings, LLC ("CryptoTech"), was a Texas limited liability company, formed in March 2019.

11. Group was the sole member of CryptoTech prior to its merger with Holdings.

12. Pursuant to a merger in February 2024, Holdings is the successor-in-interest to CryptoTech. *See* Exs. 1–2.

13. Holdings is the sole member of NFN8 Capital, LLC ("Capital"), which is a Nevada limited liability company formed in September 2023. *See* Ex. 1 at 1.

14. NFN8 Media, LLC ("Media"), was a Texas limited liability company formed in January 2010.

15. Group was the sole member of Media prior to its merger with Capital.

16. Pursuant to a merger in February 2024, Capital is the successor-in-interest to Media. *See* Exs. 1–2.

17. Holdings and Capital are wholly owned, either directly or indirectly by Group. Each such entity, in turn, is managed by myself and Mr. Rodriguez as the officers of Group, and where human action is required for such entity (such as the signing of a contract), that is done by me and/or Mr. Rodriguez. CryptoTech and Media (prior to being merged into Holdings and Capital, respectively) were wholly owned by Group. Each such entity, in turn, was managed by myself and Mr. Rodriguez as the officers of Group, and where human action was required for such entity (such as the signing of a contract), that was done by me and/or Mr. Rodriguez. I and Mr. Rodriguez also manage Group as its chief executive officer and chief operating officer, respectively.

18. NFN8 Foundation ("Foundation") is a Texas nonprofit entity that does not have owners, but is managed by its Board of Directors. The directors for Foundation are myself and Mr. Rodriguez. A true and correct copy of the certificate of filing of NFN8 Foundation is attached hereto as Exhibit 3.

**Plaintiffs' Agreement to the Terms of the Sale-Leaseback Agreements**

19. I understand that the Complaint (Dkt. 1) in this matter was filed by Mobile Med Work Health Solutions, Inc. ("Mobile Med"), which alleges it is a California corporation, JLL Ventures Inc. ("JLL"), which likewise alleges that it is a California corporation, and M-M WHS LLC ("M-M"), which alleges it is a California limited liability company. Compl. ¶¶ 60-62.

20. My understanding is that Dr. Justin Lo, M.D., controls each of the Plaintiffs. Comp. ¶ 21.

21. NFN8 records reflect that Dr. Lo, on behalf of Mobile Med, entered into a series of services and purchase agreements with Media (the "Mobile Med Services/Purchase Agreements"), and corresponding lease agreements with CryptoTech (the "Mobile Med Lease Agreements") from 2021 to 2023.

22. NFN8 records reflect that Dr. Lo, on behalf of JLL, entered into a purchase and services agreement with Media (the "JLL Services/Purchase Agreement"), and a corresponding lease agreement with Holdings, in 2023 (the "JLL Lease Agreement").

23. NFN8 records reflect that Dr. Lo, on behalf of M-M, entered into a purchase and services agreement with NFN8 Capital, LLC (the "M-M Services/Purchase Agreement"), and a corresponding lease agreement with Holdings (the "M-M Lease Agreement"), in 2024.

24. Copies of each of those agreements are attached hereto as follows.

25. A true and correct copy of the services and purchase agreement entered by Media and Mobile Med on June 28, 2021, is attached hereto as Exhibit 4 (the "June 28, 2021 Services/Purchase Agreement").

26. A true and correct copy of the lease agreement entered by CryptoTech and Mobile Med on June 28, 2021, is attached hereto as Exhibit 5 (the "June 28, 2021 Lease Agreement").

27. A true and correct copy of the services and purchase agreement entered by Media, and Mobile Med on March 14, 2022, is attached hereto as Exhibit 6 (the "March 14, 2022 Services/Purchase Agreement").

28. A true and correct copy of the lease agreement entered by CryptoTech and Mobile Med on March 14, 2022, is attached hereto as Exhibit 7 (the "March 14, 2022 Lease Agreement").

29. A true and correct copy of the services and purchase agreement entered by Media and Mobile Med on May 20, 2022, is attached hereto as Exhibit 8 (the "May 20, 2022 Services/Purchase Agreement").

30. A true and correct copy of the lease agreement entered by CryptoTech and Mobile Med on May 20, 2022, is attached hereto as Exhibit 9 (the "May 20, 2022 Lease Agreement").

31. A true and correct copy of the services and purchase agreement entered by Media and Mobile Med on May 25, 2022, is attached hereto as Exhibit 10 (the "May 25, 2022 Services/Purchase Agreement").

32. A true and correct copy of the lease agreement entered by CryptoTech and Mobile Med on May 25, 2022, is attached hereto as Exhibit 11 (the "May 25, 2022 Lease Agreement").

33. A true and correct copy of the services and purchase agreement entered by Media and Mobile Med on August 19, 2022, is attached hereto as Exhibit 12 (the "August 19, 2022 Services/Purchase Agreement").

34. A true and correct copy of the lease agreement entered by CryptoTech and Mobile Med on August 19, 2022, is attached hereto as Exhibit 13 (the "August 19, 2022 Lease Agreement").

35. A true and correct copy of the services and purchase agreement entered by Media and Mobile Med on December 22, 2022, is attached hereto as Exhibit 14 (the "December 22, 2022 Services/Purchase Agreement").

36. A true and correct copy of the lease agreement entered by CryptoTech and Mobile Med on December 22, 2022, is attached hereto as Exhibit 15 (the "December 22, 2022 Lease Agreement").

37. A true and correct copy of the purchase and services agreement entered by Media and Mobile Med, on March 20, 2023, is attached hereto as Exhibit 16 (the "Mobile Med March 20, 2023 Services/Purchase Agreement").

38. A true and correct copy of the lease agreement entered by CryptoTech and Mobile Med on March 20, 2023, is attached hereto as Exhibit 17 (the "Mobile Med March 20, 2023 Lease Agreement").

39. A true and correct copy of the purchase and services agreement entered by Media and JLL on March 20, 2023, is attached hereto as Exhibit 18 (the "JLL March 20, 2023 Services/Purchase Agreement").

40. A true and correct copy of the lease agreement entered by CryptoTech and JLL on March 20, 2023, is attached hereto as Exhibit 19 (the "JLL March 20, 2023 Lease Agreement").

41. A true and correct copy of the purchase and services agreement entered by Capital and M-M on May 24, 2024, is attached hereto as Exhibit 20 (the "May 24, 2024 Services/Purchase Agreement").

42. A true and correct copy of the lease agreement entered by Holdings and M-M on May 24, 2024, is attached hereto as Exhibit 21 (the "May 24, 2024 Lease Agreement").

### **Plaintiffs' Agreement to Arbitrate**

43. The Mobile Med Services/Purchase Agreements, Mobile Med Lease Agreements, JLL Services/Purchase Agreement, JLL Lease Agreement, M-M Services/Purchase Agreement, and M-M Lease Agreement (collectively, the "Agreements") each contain an arbitration provision.

44. The June 28, 2021 Services/Purchase Agreement, March 14, 2022 Services/Purchase Agreement, May 20, 2022 Services/Purchase Agreement, May 25, 2022 Services/Purchase Agreement, August 19, 2022 Services/Purchase Agreement, and December 22, 2022 Services/Purchase Agreement (collectively, the "2021-2022 Services/Purchase Agreements") contain the same arbitration provision. The first paragraph of that arbitration provision is excerpted below:

> **13) BINDING ARBITRATION.**
> NFN8 and the Client agree that any disputes, claims, suits, actions, causes of action, demands or proceedings (collectively, "Disputes") arising from or related to the terms of the Agreement shall not be resolved in a court, and (ii) hereby waive the Client's and NFN8's respective rights to a jury trial. Instead, the Client and NFN8 will arbitrate Disputes through binding arbitration (which is the referral of a Dispute to one or more persons charged with reviewing the Dispute and making a final and binding determination to resolve it instead of having the Dispute decided by a judge or jury in court).

Exs. 4 at 4, 6 at 5, 8 at 4-5, 10 at 4-5, 12 at 4-5, 14 at 4-5.

45. The June 28, 2021 Lease Agreement, March 14, 2022 Lease Agreement, May 20, 2022 Lease Agreement, May 25, 2022 Lease Agreement, August 19, 2022 Lease Agreement, and December 22, 2022 Lease Agreement (collectively, the "2021-2022 Lease Agreements") contain the same arbitration provision as the 2021-2022 Purchase Agreements, except that the NFN8

entity is "CryptoTech Holdings" rather than "NFN8." The first paragraph of that arbitration provision is excerpted below:

> **7. BINDING ARBITRATION**
>
> CryptoTech Holdings and the Lessor agree that any disputes, claims, suits, actions, causes of action, demands or proceedings (collectively, "Disputes") arising from or related to the terms of the Agreement shall not be resolved in a court, and (ii) hereby waive the Lessor's and CryptoTech Holdings's respective rights to a jury trial. Instead, the Lessor and CryptoTech Holdings will arbitrate Disputes through binding arbitration (which is the referral of a Dispute to one or more persons charged with reviewing the Dispute and making a final and binding determination to resolve it instead of having the Dispute decided by a judge or jury in court).

Exs. 5 at 3, 7 at 4, 9 at 4, 11 at 4, 13 at 4, 15 at 4.

46.  The arbitration provisions in both the 2021-2022 Services/Purchase Agreements and the 2021-2022 Lease Agreements contain the same process provision, excerpted below:

> d) **Process.** Any arbitration will occur in Dallas, Texas. Arbitration will be conducted confidentially by a single arbitrator in accordance with the rules of the Judicial Arbitration and Mediation Services ("JAMS"), which are hereby incorporated by reference. The state and federal courts located in Texas will have exclusive jurisdiction over any appeals and the enforcement of an arbitration award.

Exs. 4 at 4, 5 at 4, 6 at 6, 7 at 4, 8 at 5, 9 at 4, 10 at 5, 11 at 4, 12 at 5, 13 at 4, 14 at 5, 15 at 4.

47.  Additionally, the arbitration provisions in both the 2021-2022 Services/Purchase Agreements and the 2021-2022 Lease Agreements contain the same delegation clause, excerpted below:

> e) **Authority of Arbitrator.** As limited by the FAA, the Agreement and the applicable JAMS rules, the arbitrator will have (i) the exclusive authority and jurisdiction to make all procedural and substantive decisions regarding a Dispute, including the determination of whether a Dispute is arbitrable, and (ii) the authority to grant any remedy that would otherwise be available in court; provided, however, that the arbitrator does not have the authority to conduct a class arbitration or a representative action, which is prohibited by the Agreement. The arbitrator may only conduct an individual arbitration and may not consolidate more than one individual's claims, preside over any type of class or representative proceeding or preside over any proceeding involving more than one individual.

Exs. 4 at 5, 5 at 4, 6 at 6, 7 at 5, 8 at 5-6, 9 at 5, 10 at 5-6, 11 at 5, 12 at 5, 13 at 5, 14 at 5-6, 15 at 5.

48. The Mobile Med March 20, 2023 Services/Purchase Agreement and the JLL March 20, 2023 Services/Purchase Agreement (together, the "2023 Services/Purchase Agreements") contain the same arbitration provision, excerpted below:

> **11) BINDING ARBITRATION.**
> Media and the Client agree any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this Agreement to arbitrate, shall be determined by arbitration in Dallas, Texas before one arbitrator. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules. Judgment on any award may be entered in any court having jurisdiction. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.

Exs. 16 at 3, 18 at 3.

49. The Mobile Med March 20, 2023 Lease Agreement and the JLL March 20, 2023 Lease Agreement (together, the "2023 Lease Agreements") contain the same arbitration provision, excerpted below:

> **7. BINDING ARBITRATION.**
> CTH and the Lessor agree any dispute, claim or controversy arising out of or relating to this Lease Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this Lease Agreement to arbitrate, shall be determined by arbitration in Dallas, Texas before one arbitrator. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules. Judgment on any award may be entered in any court having jurisdiction. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.

Exs. 17 at 3, 19 at 3.

50. The May 24, 2024 Services/Purchase Agreement contains the following arbitration provision:

> **11) BINDING ARBITRATION.**
> Capital and the Client agree any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation, or validity thereof, including the determination of the scope or applicability of this Agreement to arbitrate, shall be determined by arbitration in Dallas, Texas before one arbitrator. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules. Judgment on any award may be entered in any court having jurisdiction. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.

Ex. 20 at 11.

51. The May 24, 2024 Lease Agreement contains the following arbitration provision:

> **7. BINDING ARBITRATION.**
> HOLDINGS and the Lessor agree any dispute, claim or controversy arising out of or relating to this Lease Agreement or the breach, termination, enforcement, interpretation, or validity thereof, including the determination of the scope or applicability of this Lease Agreement to arbitrate, shall be determined by arbitration in Dallas, Texas before one arbitrator. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules. Judgment on any award may be entered in any court having jurisdiction. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.

Ex. 21 at 3.

### **Enforcement of Terms by Parties' Representatives and Successors**

52. The Agreements each contain a "Successors and Assigns" provision.

53. The 2021-2022 Services/Purchase Agreements contain the same "Successors and Assigns" provision, excerpted below:

> **16) SUCCESSORS AND ASSIGNS.**
> This Agreement shall inure to the benefit of and will be binding upon and enforceable by the parties and their respective heirs, representatives, successors and permitted assigns.

Exs. 4 at 5, 6 at 7, 8 at 6, 10 at 6, 12 at 6, 14 at 6.

54. The 2023 Services/Purchase Agreements contain the same "Successors and Assigns" provision, excerpted below:

> **14) SUCCESSORS AND ASSIGNS.**
> This Agreement shall inure to the benefit of and will be binding upon and enforceable by the parties and their respective heirs, representatives, successors and permitted assigns; provided that Client cannot assign its rights under this Agreement without the prior written consent of Media, which consent may be withheld for any reason.

Ex. 16 at 4, 18 at 4.

55. The M-M Services/Purchase Agreement contains the following "Successors and Assigns" provision:

> **14) SUCCESSORS AND ASSIGNS.**
> This Agreement shall inure to the benefit of and will be binding upon and enforceable by the parties and their respective heirs, representatives, successors and permitted assigns; provided that Client cannot assign its rights under this Agreement without the prior written consent of Capital, which consent may be withheld for any reason.

Ex. 20 at 4.

56. The 2021-2022 Lease Agreements contain the same "Successors and Assigns" provision, excerpted below:

> **10. SUCCESSORS AND ASSIGNS.**
> This Lease Agreement shall inure to the benefit of and will be binding upon and enforceable by the parties and their respective heirs, representatives, successors and permitted assigns.

Exs. 5 at 5, 7 at 6, 9 at 6, 11 at 6, 13 at 6, 15 at 6.

57. The 2023 Lease Agreements contain the same "Successors and Assigns" provision, excerpted below:

> **10. SUCCESSORS AND ASSIGNS.**
> This Lease Agreement shall inure to the benefit of and will be binding upon and enforceable by the parties and their respective heirs, representatives, successors and permitted assigns.

Ex. 17 at 4, 19 at 4.

58. The M-M Lease Agreement contains the following "Successors and Assigns" provision:

> **10. SUCCESSORS AND ASSIGNS.**
> This Lease Agreement shall inure to the benefit of and will be binding upon and enforceable by the parties and their respective heirs, representatives, successors and permitted assigns.

Ex. 21 at 4.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 29, 2024, in Austin, Texas.

DocuSigned by:
817F30E93A204EF...
JOSHUA MOORE

10/29/2024