IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| MOBILE MED WORK HEALTH SOLUTIONS, INC., *et al.*, | |
| *Plaintiffs*, | CIVIL ACTION NO. 1:24-CV-01219-RP |
| v. | **RESPONSE TO MOTION FOR EXPEDITED DISCOVERY** |
| JOSHUA MOORE, *et al.*, | |
| *Defendants*. | |

## Introduction

As demonstrated in Defendants' pending motion to compel arbitration, Dkt. 22, each Plaintiff[1] is bound to arbitrate its claims against Defendants[2] under multiple arbitration agreements. That arbitration can and should be commenced forthwith, and an arbitrator can decide what, if any, provisional relief Plaintiffs are due. Plaintiffs also elected to include federal securities claims against all Defendants in their Complaint, thereby triggering the PSLRA's stay of discovery until a motion to dismiss as to Plaintiffs' Complaint is decided. 15 U.S.C. §78u-4(b)(3). Finally, Plaintiffs seek discovery well before the time allowed under Rule 26(d)(1). For all those reasons, there should not be expedited discovery in this case—or at least not outside of arbitration.

But if there will be expedited discovery here, it needs to be extremely limited and highly focused. What Plaintiffs seek satisfies neither condition. Defendants have offered to provide discovery on the current assets and liabilities of Group, Holdings (the successor of CryptoTech), and Capital (the successor of Media) (collectively, the "NFN8 Business Entities"). They have also offered to provide the NFN8 Business Entities' bank statements for 2024, details about the cryptocurrency mining equipment one or more of the Entities holds, and information about the facilities where this equipment is operating. This is more than enough information to show that the NFN8 Business Entities are not operating a Ponzi scheme, as Plaintiffs allege, but are engaged in the very business activities they claim—operating cryptocurrency mining systems (whether owned by an NFN8 Business Entity or subject to a sale-leaseback arrangement) to generate

---

[1] Plaintiffs are Mobile Med Work Health Solutions, Inc. ("Mobile Med"), JLL Ventures, Inc. ("JLL") and M-M WHS LLC ("M-M").

[2] Defendants are (1) NFN8 Group, Inc. ("Group"), (2) NFN8 Holdings, LLC ("Holdings"), (3) CryptoTech Holdings, LLC ("CryptoTech"), which has been merged into Holdings, (4) NFN8 Capital, LLC ("Capital"), (5) NFN8 Media, LLC ("Media"), which has been merged into Capital, (6) NFN8 Foundation ("Foundation"), and the two owners of Group, Johua Moore and Cory Rodriguez.  Compl. ¶¶ 63-70.

cryptocurrency revenue. More directly, such information suffices to show that, putting aside the merits of Plaintiffs' claims, there is no basis for provisional relief from this Court before the parties submit their dispute to arbitration as Plaintiffs agreed to do. The evidence shows that the NFN8 Entities have substantial assets and have not embarked on any effort to transfer away assets to hide them from creditors.[3]

Plaintiffs, however, want much more, whether for the purpose of trying to get early merits discovery free from the limitations and tradeoffs often imposed by arbitrators on discovery or for pursuing injunctive relief designed to shut down the NFN8 Business Entities' operations. They want all agreements and bills of sale associated with every transaction going back to 2018, which would include detailed information about other lessors. They want individual tax returns and cryptocurrency wallet information. They want to conduct onsite inspections of all of Defendants' cryptocurrency mining facilities and "to inspect all individual miners in Plaintiffs' possession, custody, or control"—of which there are thousands. And even beyond all this, Plaintiffs want to depose two owners (Joshua Moore and Cory Rodriguez) for four hours each and depose "NFN8 accountants" for an unspecified length of time.

If this Court orders expedited discovery, it should be no more than what Defendants have proposed. A JAMS arbitrator will soon be "tasked with adjudicating the parties' dispute and therefore [will be] far better suited to determine whether provisional document production"—or any other provisional discovery—"is warranted." *Goal Acquisitions Corp. v. Digital Virgo*, 2024 WL 1078431, at *4 (W.D. Tex. Mar. 12, 2024).

---

[3] Defendants made this proposal in light of the Court's direction last Monday for the parties to meet and confer to try to reach a compromise on expedited discovery. Defendants still maintain, and preserve, their position that expedited discovery is not justified here.

**Argument**

I. *Expedited preliminary discovery in the present context—where a securities fraud claim has been pled and a motion to compel arbitration is pending—is highly disfavored, and at the very least needs to be correspondingly highly targeted.*

Plaintiffs have elected to include in their Complaint a securities fraud claim. In doing so, they triggered provisions of the federal securities law, including the stay of discovery provided in 15 U.S.C. 78u-4(b)(3)(B). That law provides:

> In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.[4]

Plaintiffs address this automatic stay protection only in a footnote. Mot. at 7–8 n.5. Relying on *Global Intellicom, Inc.* v. *Thomson Kernaghan & Co.*, 1999 WL 223158, at *2 (S.D.N.Y. Apr. 16, 1999), they argue that they will suffer undue prejudice if not allowed expedited discovery because such "discovery will allow Plaintiffs to determine the true nature of Defendants' business" and thus "permit the Court . . . [to] protect Defendants' assets if Plaintiffs' concerns prove justified." Mot. at 8 n.5. Plaintiffs' argument, however, is misplaced. *Global* involved defendants trying to take over the plaintiff's board of directors, which would give the defendants control of the plaintiff and the ability to stop the plaintiff from seeking redress. *See* 1999 WL 223158, at *2. Based on this, the court allowed focused discovery of the defendants' trading activity in the plaintiff's stock. *Id*. at *1.

Nothing of that nature is present here. Rather, what Plaintiffs claim is that they have an informational disadvantage, which courts have held in other contexts does not justify an exception to the PSLRA discovery stay. *See In re Cassava Sciences, Inc. Secur. Litig.*, 2023 WL 28436, at

---

[4] To be clear, this stay applies from an onset of a case and does not require that a motion to dismiss be pending (as opposed to forthcoming). *See Newby v. Enron Corp.*, 188 F. Supp.2d 684, 709 (S.D. Tex. 2002).

3

\*4 (W.D. Tex. Jan. 2, 2023); *Dipple v. Odell*, 870 F. Supp.2d 386, 394 (E.D. Pa. 2012). Moreover, Plaintiffs have not "show[n] that they will be unduly prejudiced without the discovery requested." *In re Cassava Sciences*, 2023 WL 28436, at \*4. They have already filed a complaint, an application for a temporary restraining order, and the instant discovery motion making allegations on information that is already available. Plaintiffs may want to better "determine the true nature of Defendants' business," but that desire does not prove that they will be unduly prejudiced unless the Court grants an exception to the PSLRA's mandatory stay. *See In re Vivendi Universal, S.A. Secur. Litig.*, 381 F. Supp.2d 129, 130-31 (2003). Indeed, if better understanding a defendant's business was a basis for an exception to the mandatory stay, the exception would swallow the rule because presumably ever plaintiff could claim that it wants to better understand its opponent's business. *Cf. In re Cassava Sciences*, 2023 WL 28436, at \*4 (allowing plaintiffs early discovery that they could use to defend their claims in opposition to a motion to dismiss, or to amend their claims, would contravene one purpose of the PSLRA).

An additional hurdle to Plaintiffs' request for expedited discovery is that they have agreed to resolve disputes with Defendants through arbitration, not litigation.[5] In this context as well, expedited preliminary discovery is disfavored (though not as strongly as under the PSLRA). Outside of the arbitration context, court-sanctioned expedited discovery is permitted upon a party proving "good cause," which considers factors such as whether a preliminary injunction motion is pending, the breadth of discovery requests, and the purpose for requesting expedited discovery. *Accruent, LLC v. Short*, 2017 WL 8811606, at \*1 (W.D. Tex. 2017) (Pitman, J.). When parties have agreed to arbitration, however, the more appropriate course is for a court to promptly send

---

[5]   Plaintiffs do oppose Defendants' motion to compel arbitration of their claims, but only on the thin basis "that at least some claims, as against at least some Defendants, are not arbitrable because they are outside the scope of the relevant arbitration clauses." Dkt. 22 Cert. of Conf.

4

the parties to arbitration and allow the arbitrator to address issues of expedited discovery (as well as any related requests for provisional relief). This is consistent with the Court's approach in *Goal Acquisitions*, in which it denied an expedited discovery request:

> Last, Goal seeks an injunction ordering DV to "[i]dentify all persons to whom it was introduced by Goal and with whom it has communicated from July 5, 2023 to the present [and p]roduce all records of such communications ...." (Mot. Prelim. Inj., Dkt. 12, at 13). Here, the Court finds that this request is best left to the JAMS arbitration panel. While the NDA allows the parties to seek provisional relief in federal court, the NDA also allows the arbitrator to issue such relief. And the parties' NDA authorizes "provisional remedies" only "in aid of arbitration." (NDA, Dkt. 13-1, at 13). The JAMS arbitration panel is already tasked with adjudicating the parties' dispute and therefore is far better suited to determine whether provisional document production is warranted.

2024 WL 1078431, at *4.[6]

Other courts have followed a similar approach and denied court-supervised expedited discovery in favor of promptly compelling arbitration and allowing an arbitrator to supervise such discovery. *See Mason v. Big Star Transit LLC*, 2021 WL 4948214, at * 6 (N.D. Tex. Sept. 28, 2021) (denying expedited discovery request as moot because the court granted motion to compel arbitration); *BAE Sys. Aircraft Controls, Inc. v. Eclipse Aviation Corp.*, 224 F.R.D. 581, 588 (D. Del. 2004) (denying expedited discovery request because the injunctive relief sought fell under the arbitration clause and the court thus determined that the arbitration should go forward); *Merrill Lynch v. O'Connor*, 194 F.R.D. 618, 623–24 (N.D. Ill. 2000) ("Given that empanelment of a National Association of Securities Dealers arbitration panel is imminent, and the fact that interrogatories and depositions are not permitted in such arbitration proceedings, expedited discovery is all the more inappropriate on this record, because it appears that Merrill Lynch is

---

[6] In *Goal*, it appears that an arbitration panel had already been constituted. That should not be a meaningfully distinguishing factor here because Defendants' motion to compel arbitration has already been filed, it is based on clear arbitration provisions in eighteen different agreements executed by Plaintiffs, and arbitration can be compelled forthwith.

5

attempting the proverbial 'end-run' around the arbitration process to which it is contractually bound."). As Judge Rakoff explained when denying expedited discovery in *Al Nawasi Trading Co. v. BP Amoco Corp.*, 191 F.R.D. 57 (S.D.N.Y. 2000) "it is one thing to apply to a court to preserve the status quo until a duly constituted arbitrator can act; but it is quite another thing to consciously avoid taking steps that would give the arbitrator the ability to act, and, instead to apply to another court for relief. Given the modern preference for international arbitration, such bootstraps are no longer fashionable." *Id*. at 59.

Finally, even in the context where no federal securities claim has been pled and no arbitration or motion to compel arbitration is pending, allowing a plaintiff to obtain expedited discovery is still "not the norm," and a plaintiff is required to show "the *need* for the expedited discovery." *Merrill Lynch*, 194 F.R.D. at 623 (emphasis in original). This means that the plaintiff is required to show both "good cause" for seeking expedited discovery and that the expedited discovery it seeks is "narrowly tailored in scope." *Accruent*, 2017 WL 8811606, at *1; *St. Louis Group v. Metals and Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011).

II. To the extent this Court permits expedited discovery, it should require no more discovery than Defendants have already proposed to Plaintiffs—and should not require depositions.

Considering the strict limitations (if not prohibition) on early expedited discovery in a case that both pleads securities claims and is destined for arbitration, Defendants' proposal for such discovery is reasonable. Defendants proposed to provide the following:

1. Information on the mining computers under the control of a NFN8 Business Entity (whether owned by the Entity or subject to a sale-leaseback arrangement)
2. 2024 monthly balance sheets and profit-and-loss statements for the NFN8 Business Entities (consolidated and, to the extent available, by Entity)
3. 2024 monthly bank statements for each NFN8 Business Entity that maintains a bank account
4. Documentation on any outstanding loans or credit agreements for any NFN8 Business Entity

6

5. Information on each facility where a NFN8 Business Entity is conducting mining operations, as well as applicable hosting, lease and/or electricity provider agreements with third parties.
6. Identification of the owner(s) of each NFN8 Business Entity and of the accountants for the NFN8 Business Entities.

Dkt. 20-5 at 6–7.

Plaintiffs accuse Defendants throughout their Complaint and their Motion of operating a Ponzi scheme—one that is regularly dissipating assets through bad investments, payments to old investors with new investments, and expenditures for frivolous purposes. Mot. at 7; *see also id.* at 1, 3, 5, 9, 15-16. Plaintiffs also repeatedly express their purported concern that Defendants will not have assets to pay any possible judgment against them because Plaintiffs speculate that Defendants are dissipating assets. Mot. at 2, 5, 7, 8, 1. The documents Defendants proposed to produce will address that concern by revealing the real assets owned by NFN8 Business Entities, their ongoing cryptocurrency mining, and their legitimate business operations. The documents will show that there is no basis for Plaintiffs to need a temporary injunction until they commit, or are compelled, to arbitration, in which an arbitrator can resolve the parties' dispute.

Rather than focusing themselves on the limited documentation they could seek to understand that they do not need, and are not entitled to, preliminary injunctive relief before proceeding to arbitration, Plaintiffs are trying to use the current proceedings to embark on a broad discovery search so that they can try to dissect the NFN8 Business Entities' operations and engage in a fishing expedition outside of whatever strictures and tradeoffs will be placed on them in arbitration.  Not only do they want the NFN8 Business Entities' lease agreements and services and purchase agreements with other customers, but they want such agreements dating all the way back to 2018. They don't want just information on mining computers that a NFN8 Business Entity currently holds but all such computers they have held at any point since 2020, including computers

that the Entity has since sold. They are not satisfied with 2024 financial records (including monthly or quarterly balance sheets) showing cryptocurrencies owned, but want "[r]ecords of all cryptocurrency mined by Defendants" and even details on Defendants' cryptocurrency wallets from January 2020 to present. *See* Dkt. 20-15 (Proposed Order) 4. None of this is narrowly tailored to whether a short-term preliminary injunction is required until an arbitrator is appointed and can decide what—if any—provisional relief is necessary and schedule proceedings to be able to efficiently and effectively resolve the parties' dispute.

Plaintiffs' means reflect their ends. Plaintiffs' motion, like the discovery Plaintiffs seek, goes well beyond the scope allowed under the applicable rules and delves into subject matter far afield from the issues before the Court—compelling arbitration and deciding if any provisional relief is needed before doing so. Under this Court's rules, Plaintiffs' discovery motion was required to be no more than 10 pages. *See* Local R. CV-7. Despite this requirement, Plaintiffs filed a 16-page motion that would have been over 20 pages were it not for pages of single-spaced text and lengthy footnotes. Plaintiffs cannot justify their disproportionate requests by overloading filings with aspersions and then claiming that additional discovery is needed to address it all.

To abide by the Court's rules and limit their response to 10 pages, Defendants decline to take Plaintiffs' bait and waste space addressing here all of Plaintiffs' accusations and sidebars. *See, e.g.*, Mot. at 11, 14–15 (raising arguments about entities not involved in the case like clickfirstmedia.com and the propriety of what Plaintiffs characterize as "press releases dressed up as news articles and distributed by pay-for-play companies like BusinessWire").

But to address one example, Plaintiffs continue to emphasize that the per-mining-computer amount they paid to a NFN8 Business Entity was much greater than the cost of a mining computer. *See* Mot. 13; *see also* Compl. ¶¶ 145, 150–51, 163, 167, 177, 205, 214. But there is no evidence

that Plaintiffs were told (or believed) that these two numbers would or should be equal. Rather, the services and purchase agreements that Plaintiffs entered reflect that Plaintiffs were paying for more than just mining computers, but also for the operation of those computers to mine cryptocurrency and the related services, software and hardware. *See, e.g.*, Dkt. 22-5 § 3 ("Operations"). Plaintiffs' allegations that this difference is suspicious do not make it so nor do they warrant further discovery.

Plaintiffs also note that Defendants claim "[t]hey have never missed a lease payment." Mot. 10–11. But Plaintiffs bury in a parenthetical that the point that this was a statement made in January 2023, before any lease payments were alleged to have been missed. Mot. at 10. Plaintiffs acknowledge in a footnote that this claim is not on the nfn8.com website anymore, but they could find it using a Google search. Mot. at 11 n.10. There is no claim, however, that Defendants control Google or what the Google search engine might or can retrieve. (A simple example of this is a Google search for Western District Local Rules. The first hit is to the 2012 version of the Local Rules that is still accessible on the court website at https://www.txwd.uscourts.gov/wp-content/uploads/Documents/Local%20Court%20Rules/-Local%20Court%20Rules%20(Full).pdf. This is a product of how Gooege crawls and indexes web pages, not an effort by anyone in the courthouse to promote the 2012 Local Rules.)

Likewise, the Court should not credit Plaintiffs' attempt to bolster their expansive requests by suggesting something nefarious about Defendants' discovery negotiations. *See* Mot. 13–14. As directed, the parties conferred regarding Plaintiffs revised and expanded proposal. *Compare* Dkt. 20-1 at 3 (acknowledging that "Plaintiffs are requesting relatively detailed information"), *with* Dkt. 20-2 at 4–6 (removing that acknowledgment and adding requests like documents for all sale-leaseback transactions since 2018). The parties conferred again regarding Defendants'

counterproposal, *see* Dkt. 20-3; and to address Plaintiffs' concerns about receiving a "snapshot" of current financial condition, Defendants amended their counterproposal to include financial statements for all NFN8 Business Entities by month for 2024, *see* Dkt. 20-5. Plaintiffs did not respond and instead filed a motion characterizing "Defendants' conduct in discovery negotiations" as akin to a "significant red flag." *See* Mot. 13. Treating disagreements about the breadth of discovery as further proof of the need for broad discovery is circular.

Finally, whatever this Court may order in terms of document production or written information, it should not order depositions. Depositions are particularly burdensome because of travel, preparation, and deposition time. Moreover, Plaintiffs' deposition request is another example of them reaching far beyond what could be warranted to address pre-arbitration provisional relief. At the last hearing before the Court, Plaintiffs proposed two-hour depositions of Messrs. Moore and Rodriguez. Now they request four-hour depositions of each. On top of that, they also want to depose Group's accountants and, still further, conduct onsite inspections. And Plaintiffs continue to refuse to define the scope of such depositions, which can safely be predicted to extend far beyond anything narrowly tailored to preliminary-injunction-related information given the scattershot allegations in Plaintiffs' Motion. All this counsels strongly against early, expedited, pre-arbitration depositions.

**Conclusion**

For the forgoing reasons, to the extent that this Court orders expedited discovery, any such discovery should be limited to the documents and information included in Defendants' proposal. Dkt. 20-5. No depositions should be ordered, but if any depositions are ordered, they should be limited as set out in Defendants' proposal.

Dated: October 30, 2024

Respectfully submitted,

*/s/ Christopher R.J. Pace*
Christopher R.J. Pace
crjpace@winston.com
Texas State Bar No. 789534
Winston & Strawn LLP
2121 North Pearl Street, Suite 900
Dallas, TX 75201
Telephone: 214.453.6500
Facsimile:  214.453.6400

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of October, 2024, I caused the foregoing document to be electronically filed using the CM/ECF system, which automatically sends notification of such filing to all counsel of record.

*/s/ Christopher R.J. Pace*
Christopher R.J. Pace