UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **MOBILE MED WORK HEALTH SOLUTIONS, INC.;** <br> **JLL VENTURES, INC.; and** <br> **M-M WHS LLC,** <br><br> *Plaintiffs* <br><br> v. <br><br> **JOSHUA MOORE; CORY RODRIGUEZ; NFN8 GROUP, INC.; NFN8 HOLDINGS, LLC; NFN8 CAPITAL, LLC; NFN8 MEDIA, LLC; NFN8 FOUNDATION; and CRYPTOTECH HOLDINGS, LLC,** <br><br> *Defendants* | § § § § § § § § § § § § § § § § § | **CASE NO. AU:24-CV-01219-RP** <br><br> **PLAINTIFFS' REPLY TO RESPONSE TO OPPOSED MOTION FOR EXPEDITED DISCOVERY AND REQUEST FOR A HEARING** |

## I. INTRODUCTION

The more Plaintiffs learn about Defendants from their public-record research, the more their conduct looks like a Ponzi scheme. It is thus perhaps understandable that Defendants' Response does everything it can to persuade the Court to take its eye off the ball—even going so far as to selectively quote a negotiated Certificate of Conference to bolster their argument that this matter should be pushed to arbitration before the Court exercises its legitimate authority to order discovery and grant Plaintiffs' provisional relief. Simply put, Defendants ignore the facts and are wrong on the law. That is, the Court has the authority to grant the requested discovery under both the PSLRA and general federal law, and the facts Defendants elide or ignore completely in their motion more than satisfy both standards.

As Defendants continue to resist discovery, the stakes get higher. On October 30, 2024, attorney Jeffrey Cox contacted counsel for Plaintiffs to discuss four of his own clients' similar

concerns regarding their $270,000.00 in NFN8 investments. *See* Declaration of Jeffrey Cox, Ex. A.

Their story mirrors Plaintiffs' own, including the fact that Defendants stopped making their lease payments in the summer of 2024 and have not resumed payment. *See, e.g.*, Ex. A at ¶¶11-14. But the one significant *difference* between Plaintiffs' experience and Mr. Cox's clients' experiences amplifies Plaintiffs' Ponzi scheme concerns even further. Mr. Cox's Declaration indicates that his clients experienced a payment stoppage **beginning in June of 2023** that Defendants initially claimed would last only two to six months. *Id.* at ¶11. However, payments did not resume for ten to eleven months, and then resumed only for a short time. *Id.* at ¶¶12-14.

As explained in the Motion, Defendants reported raising over $16 million in *new* funds through Sale Leaseback Securities sales between August 2023 and January 2024. Dkt. 20 at 5; *see also* Dkt. 20 at Ex. G. Without the targeted meaningful discovery Plaintiffs seek, Plaintiffs cannot pinpoint when within that five-month period Defendants secured all of relevant investments. But the fact that Defendants stopped making payments on at least some of their lease obligations in June of 2023, only to resume them briefly in the spring of 2024 after $16 million in new money had come in, strongly suggests that Defendants ultimately used much of the $16 million they raised toward the end of 2023 to make what currently appear to be their last regular payments in early 2024.

Tellingly, Defendants' Response never once claims that producing documents in Plaintiffs' request for discovery would be burdensome. It wouldn't be. Rather than broad requests asking for emails, text messages, or other materials requiring a search-and-review protocol, Plaintiffs ask for financial records and business information that should be readily at hand. Nor do Defendants argue that it would be materially less burdensome to produce only the 2024 information than to

produce earlier information. That's not surprising given that much of this data, like bank statements and financial statements, can be obtained at the touch of a button.

Even so, Defendants propose to produce only 2024 financial information. Defendants say that providing such information would give Plaintiffs all the information they need to show that Defendants are engaging in legitimate cryptocurrency operations. That is simply incorrect. Defendants received $16 million in new investor capital at the end of 2023 and another $3 million from May 2024 to August 2024, yet they are currently unable or unwilling to pay Plaintiffs ***and other investors***. It is possible Defendants might be able to show a viable balance sheet today. But providing only 2024 financials fails to show the Company's cash flows *over time*. Plaintiffs need that information to determine whether and to what extent they use new investor money to pay older investors. Defendants also refuse to provide *any* information on their mining operations—information which would allow Plaintiffs to test Defendants' claims that they are making enough money through their mining operations to cover the high promised returns to investors.

Finally, Defendants urge the Court to defer to an arbitrator any decision on preliminary relief or expedited discovery. But under the circumstances, this Court is the proper forum for provisional relief. The scope of arbitrability has not yet been determined; moreover, ss Defendants acknowledge, both the JAMS rules and some of the relevant agreements allow this Court to enter temporary relief, even if some of the disputes at issue in this case are ultimately subject to arbitration. In addition, given the strong public interest here in preventing harm to potentially hundreds of victims and the substantial risk of undue prejudice to Plaintiffs associated with further delay, the Court should exercise its power first to order discovery and then to enter the requested relief. Even if arbitration is appropriate—a position Plaintiffs do not concede as to all claims and parties—only this Court can craft the meaningful temporary relief that will ensure that Plaintiffs and other victims of Defendants' fraud have something left to arbitrate over.

3

36365113.v5

This case requires expedited *Court-ordered* discovery in advance of a meaningful preliminary injunction hearing to protect the interests of Plaintiffs and the other victims of Defendants' scheme.

## II.   DISCUSSION

**A. Plaintiffs have shown undue prejudice.**

The PSLRA allows the Court to order particularized discovery "necessary to prevent undue prejudice." Section 78u-4(b)(3)(B). As the Court implicitly acknowledged in ordering discovery, that standard is met here. Plaintiffs and other victims face undue prejudice if their assets disappear before an arbitrator can render an award or a court can render a judgment. When defendants might be shielded from liability in the absence of the requested expedited discovery, the PSLRA stay should be lifted. *See Vacold LLC v. Cerami*, No. 00 CIV. 4024 (AGS), 2001 WL 167704, at *6 (S.D.N.Y. Feb. 16, 2001). In *Vacold LLC v. Cerami*, the plaintiffs alleged that the defendant conspired to defraud them by making material misrepresentations and inducing it to sell its shares in stock when financing was available. There, the court found that removing the PSLRA's discovery stay was warranted on grounds of undue prejudice because the failure to allow discovery on the limited issue of the nature and timing of the financing company's interest and investment in the stock would "unfairly insulate defendants from liability for securities fraud as alleged by the plaintiffs." *Id*. at *7.[1] That same reasoning applies here. If Plaintiffs are not allowed to obtain

---

[1] The legislative history of the PSLRA's discovery stay further illustrates the undue prejudice Plaintiffs face, by explaining the true purpose of the law. As *In re National Century Financial Enterprises, Inc. Financial Investment Litigation*, 347 F.Supp.2d 538, 540 (S.D. Ohio 2004) explains, Congress enacted the pre-motion-to-dismiss stay because "discovery in securities class actions resembles a fishing expedition…. Thus, plaintiffs sometimes file frivolous lawsuits in order to conduct discovery in the hopes of finding a sustainable claim not alleged in the complaint. Accordingly, the Committee has determined that discovery should be permitted in securities class actions only after the court has sustained the legal sufficiency of the class complaint." *Id.* (quoting Senate Report No. 104–98, 104th Congress, reprinted in 1995 U.S.C.C.A.N. 679, 693 (1995) (ellipses in original case)). The facts Plaintiffs allege in their Complaint and other filings

4

meaningful discovery in advance of a temporary injunction, any arbitration award or judgment may well be meaningless as Defendants' Ponzi scheme collapses on itself.[2]

### B. The Court need not defer to an arbitrator here.

Defendants mischaracterize Plaintiffs' position when they claim that Plaintiffs agreed to arbitrate their claims. *See, e.g.,* Dkt. 23 at 3, 5.  The parties expressly negotiated the Certificate of Conference associated with Defendants' Motion to Compel Arbitration and the agreed language included the statement that "Plaintiffs oppose the arbitration of their request for preliminary injunctive relief"—something Defendants conveniently elide in their Response.  *See* Dkt. 22 at 18.[3]

As Plaintiffs have repeatedly shown, this Court can and should grant temporary relief—including expedited discovery—regardless of Defendants' arbitration position.  First, the Fifth Circuit has held that district courts may issue an injunction pending arbitration. *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).  Contrary to Plaintiffs' assertions, "courts have historically entertained requests for provisional remedies during the pendency of arbitrations and have viewed the judicial consideration of such requests as consistent with, and not contrary to, the spirit of the

---

demonstrate that their claims are the furthest thing imaginable from a class-action "fishing expedition," and the nature of the alleged scheme means that letting Defendants continue to operate without providing the particularized discovery Plaintiffs seek risks undue prejudice by definition. *Janvey*, 647 F.3d at 597 ("This Circuit has found that a Ponzi scheme is, as a matter of law, insolvent from its inception.") (internal citations omitted).

[2] For the same reason, pre-hearing discovery is also appropriate under Rule 26.  *See, e.g.*, *Legacy of Life, Inc. v. Am. Donor Services, Inc.*, 2006 WL 8435983, at *1 (W.D. Tex. Oct. 10, 2006) (allowing expedited discovery prior to preliminary injunction hearing); *Tracfone Wireless, Inc. v. King Trading, Inc.*, 2008 WL 918243, at *2 (N.D. Tex. Mar. 13, 2008) (same); *Planned Parenthood Gulf Coast, Inc. v. Gee*, 2018 WL 11472388, at *16 (M.D. La. May 23, 2018) (same); *Universal Prot. Serv., LP v. Prosegur Sec. USA*, 2023 WL 4980942, at *1 (W.D. Tex. Aug. 2, 2023) (same); *Yellowstone Landscape v. Fuentes*, 2020 WL 4547150, at *3 (S.D. Tex. Aug. 6, 2020) (same).

[3] For several reasons irrelevant to Plaintiffs' current Motion under binding Fifth Circuit precedent, Defendants cannot cure their elision by arguing in their own footnote that Plaintiffs have only a "thin basis" on which to oppose arbitration.  *See* Dkt. 23 at 5, n.5.

5

Federal Arbitration Act and a party's right to submit a dispute to arbitrators and not courts." *Compass-Charlotte 1031, LLC v. Prime Capital Ventures*, 2024 WL 260507, at *5 (N.D.N.Y. Jan. 24, 2024) (collecting cases).

Second, the JAMS rules allow a district court to rule on a preliminary injunction to preserve the status quo before a case goes to arbitration. *See JAMS Comprehensive Arbitration Rules* at Rule 24 ("[a]ny recourse by a Party to a court for interim or provisional relief shall not be deemed incompatible with the agreement to arbitrate. . .").[4] Preserving the status quo is especially necessary here because the risk and scope of imminent harm to Plaintiffs and other investors increases the longer Defendants' scheme continues.

Third, some of the arbitration clauses at issue expressly state, "[t]his clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction." *See, e.g.,* Dkt. 22-22 at 4. "A provisional remedy is temporary remedy awarded before judgment and pending the action's disposition, such as a . . . preliminary injunction. . . . Such a remedy is intended to maintain the status quo by protecting a person's safety or preserving property." *Compass-Charlotte 1031, LLC*, 2024 WL 260507, at *5 (cleaned up and citing *Black's Law Dictionary*). Such a remedy, and discovery in aid of it, is necessary to preserve Plaintiffs' and the other victims' hope of a meaningful recovery.

### III.   CONCLUSION

Plaintiffs request that Defendants be ordered to produce the discrete, easy-to-compile, and necessary expedited discovery that Plaintiffs have requested to prevent undue prejudice.

---

[4] Rule 24 applies to JAMS arbitrations under both the full Comprehensive Rules and the Expedited Procedures.

Date:  October 31, 2024

Respectfully submitted,

**STEPTOE LLP**

*/s/ David Isaak*
Hector R. Chavez
Texas State Bar No. 24078335
David Isaak
Texas State Bar No. 24012887
*Admitted Pro Hac Vice*
Paul Stancil
Texas State Bar No. 00797488
*Admitted Pro Hac Vice*
717 Texas Avenue, Suite 2800
Houston, Texas 77002
Telephone (713) 221-2300
hchavez@steptoe.com
disaak@steptoe.com
pstancil@steptoe.com

Ashwin Ram
*Admitted Pro Hac Vice*
California State Bar No. 277513
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
aram@steptoe.com

**THE DURRANT LAW FIRM, APC**

John S. Durrant
*Admitted Pro Hac Vice*
California State Bar No. 217345
john@durrantlawfirm.com
2337 Roscomare Rd., Suite 2-180
Los Angeles, CA 90077
Telephone: (424) 273-1962

**COUNSEL FOR PLAINTIFFS
MOBILE MED WORK HEALTH SOLUTIONS, INC.; JLL VENTURES, INC.; AND
M-M WHS LLC**

36365113.v5

**CERTIFICATE OF SERVICE**

    I certify that on October 31, 2024, a true and correct copy of the foregoing document has been served on all counsel of record via the Court's CM/ECF system.

                                        */s/ David Isaak*
                                        David Isaak

36365113.v5