# EXHIBIT A

**DECLARATION OF JEFFREY L. COX**

Pursuant to 28 U.S.C. § 1746, the undersigned states as follows:

1. My name is Jeffrey L. Cox. I am over twenty-one years of age and have personal knowledge of the matters set forth herein.

2. I am an attorney who has been licensed to practice in the State of Florida since September 16, 1999. I am a member of the Florida Bar in good standing.

3. I am a partner with the law firm of Sallah, Astarita & Cox, LLC located at 3010 N. Military Trail, Suite 210, Boca Raton, Florida 33431.

4. I currently represent Messrs. Fred Weis, Thomas Kelly, and Michael Imbesi as well as the Kelly Breen Trust, each who have invested funds in a cryptocurrency mining sale-leaseback program with NFN8 Capital LLC (formerly NFN8 Media, LLC) and NFN8 Holdings, LLC (formerly CryptoTech Holdings, LLC) (collectively, "the Entities").

5. My clients have collectively invested $240,000 with the Entities.

6. I recently discovered and reviewed the Complaint in the instant case, *Mobile Med Work Health Solutions, Inc., et al. v. Moore, et al.*, Case No. 1:24-CV-1219 (W.D. Tex. Oct. 10, 2024).

7. My clients have encountered similar issues with the Entities as some of those described in the Complaint.

8. While each of my clients entered into separate agreements with the Entities at different times, there are certain undisputed facts that are common to each one.

9. The agreements each involve a purported "Mining Farm(s) Services and Purchase Agreement" and a corresponding "Mining Farm Lease Agreement." Based on the agreements, NFN8 purportedly sold "computer equipment" called a "Mining Farm" to each of my clients at the cost of $30,000 per Mining Farm. They simultaneously entered into agreements with one of the Entities to lease back the equipment.

10. Although some of the terms of my clients' lease agreements differ slightly over time, the agreements generally provide that my clients would receive a so-called "lease fee" over the course of the agreement with annualized returns on the investments. At the end of the lease agreement, the agreements provide that one of the Entities would also repurchase

the computer equipment from my clients for their original price (i.e., their principal investments).

11. On June 19, 2023, one of the Entities emailed my clients and informed them that it was "pausing/forbearing" my clients' lease fee payments for two (2) to six (6) months.

12. Contrary to representations that the lease payments would be paused for two (2) to six (6) months, my clients' lease payments were paused between ten (10) and eleven (11) months.

13. After merely two (2) to three (3) months of restarted payments, and without any notice to my clients, one of the Entities again paused the lease fee payments.

14. Since the last lease fee payments in May 2024, the Entities have failed to make any lease fee payments to my clients.

15. My clients are currently owed lease fee payments from June 2024 through October 2024.

16. My clients have repeatedly attempted, to no avail, to resolve these payment issues with the Entities.

I declare under the penalty of perjury that the foregoing is true and correct.

_____
Jeffrey L. Cox

Executed on the 31st day of October 2024.