IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MOBILE MED WORK HEALTH SOLUTIONS, INC., et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:24-CV-1219-RP |
| JOSHUA MOORE, et al., | § § § | |
| Defendants. | § | |

**ORDER**

Before the Court are Plaintiffs Mobile Med Work Health Solutions, Inc., JLL Ventures, Inc., and M-M WHS LLC's ("Plaintiffs") Motion to Expedite Discovery and Request for Hearing, (Dkt. 20), and related briefing, (Resp, Dkt. 23; Reply, Dkt. 24). After considering the parties' briefs, the record, and the relevant law, the Court grants the motion in part and denies it in part.

**I. BACKGROUND**

Plaintiffs allege that Defendants Joshua Moore, Cory Rodriguez, NFN8 Group, Inc., NFN8 Holdings, LLC, NFN8 Capital, LLC, NFN8 Media, LLC, NFN8 Foundation, and Cryptotech Holdings, LLC ("Defendants") fraudulently induced them to invest over $10 million in nine separate sale-leaseback transactions under which Plaintiffs purchased cryptocurrency mining machines ("miners") from Defendants, then leased those miners back to Defendants in exchange for the proceeds that Defendants would generate from the mining activity. (Mot. TRO, Dkt. 2, at 4). According to Plaintiffs, Defendants used false promises to convince Plaintiffs to invest substantial sums of money into buying miners, then failed to use that money as agreed. (*Id.* at 11). Defendants began defaulting on their promised payments to Plaintiffs in mid-2024. (*Id.*). Since then, Plaintiffs have launched an investigation into Defendants' business, giving Plaintiffs reason to believe that

1

Defendants are engaged in a "Ponzi scheme." (*Id.* at 20). Plaintiffs filed their complaint on October 10, 2024.

On the same day they filed their complaint, Plaintiffs filed a motion for a temporary restraining order ("TRO"), asking the Court to freeze Defendants' assets. (*Id.* at 2). According to Plaintiffs, this relief would prevent Defendants from dissipating assets that could be used to compensate Plaintiffs if they were to prevail. (*Id.*). Plaintiffs also requested expedited discovery ahead of a preliminary injunction hearing. (*Id.* at 29). Specifically, Plaintiffs proposed:

- Each side exchange five interrogatories and five requests for production;
- Each side select two witnesses for a two-hour deposition;
- Defendants identify any and all accountants they have retained (whether internally or externally) so that Plaintiffs can depose one or more of these individuals, with such depositions not to count against the two-witness total;
- Defendants identify all cryptocurrency wallets they hold or have held, including but not limited to all cryptocurrency wallets that hold or have held cryptocurrency keys for cryptocurrency mined by Defendants; and
- Defendants produce 36 months of bank statements for all Defendants.

(*Id.* at 29–30). After holding a hearing on the motion and finding little evidence that Defendants had or imminently planned to dissipate their assets, the Court declined to grant the TRO on October 11, 2024. (Order, Dkt. 10, at 4). The Court did not rule on the request for preliminary discovery.

The Court held a phone conference with both parties on October 21, 2024, to discuss preliminary discovery. (Minute Entry, Dkt. 19). The Court explained that it would allow for preliminary discovery and instructed the parties to confer on the scope of discovery before the end of the week. The parties met twice but were unable to resolve their differences. (Mot. Expedited Discovery, Dkt. 20, at 3).

2

Plaintiffs filed this motion for expedited discovery on October 25, 2024. In addition to the requests they had made previously, Plaintiffs now seek:

- A spreadsheet or other document identifying all cryptocurrency mining machines Defendants have owned or controlled from January 1, 2020 to present;

- A spreadsheet or other document detailing Defendants' cryptocurrency trading activities;

- Records of all cryptocurrency mined by Defendants;

- All purchase agreements, lease agreements, and bills of sale relating to all sale-leaseback transactions from 2018 to present;

- Other summary information regarding Defendants' sale-leaseback business;

- A spreadsheet or other document identifying all miners sold or otherwise disposed of, whether through BlockOverstock.com or otherwise.

- Documents detailing Defendants' current and past financial performance including:
    - Financial statements
    - Bank statements
    - Records of all Defendants' assets and indebtedness
    - Corporate tax returns

(*Id.* at 5–6). Plaintiffs also ask the Court to order four-hour depositions—instead of the two-hour depositions they had previously requested—of Defendants Joshua Moore and Cory Rodriguez. Finally, Plaintiffs request an inspection of the miners and mining facilities Defendants own, control, or use. (*Id.*). Plaintiffs argue that the broadened scope of discovery is justified because Plaintiffs' continued search of publicly available information "make it ever more apparent that Defendants are running a Ponzi scheme." (*Id.* at 1). This search has led Plaintiffs "to believe that Defendants have serially defrauded not only them, but also hundreds of other investors who collectively invested over $50 million in Defendants' sale-leaseback securities." (*Id.*).

Defendants oppose the motion and ask that the Court instead send the case to arbitration pursuant to the automatic-stay provision of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §78u-4(b)(3), and the arbitration clauses that exist in several contracts between Plaintiffs and Defendants. (Resp., Dkt. 23, at 4). In the alternative, Defendants have proposed more limited discovery than what Plaintiffs seek. (*Id.*). They oppose Plaintiffs' request for historical documents, instead agreeing to provide only current information and information from the year 2024. (*Id.* at 6–7). They argue that these documents are enough to confirm "the real assets owned by NFN8 Business Entities, their ongoing cryptocurrency mining, and their legitimate business operations." (*Id.* at 7).

## II. LEGAL STANDARD

Federal Rules of Civil Procedure 34(b) and 26(d) allow a party to seek expedited discovery, and the Fifth Circuit has permitted such discovery in certain circumstances. *See, e.g.*, *FMC Corp. v. Varco Int'l, Inc.*, 677 F.2d 500, 501 (5th Cir. 1982) (affirming district court's order authorizing expedited discovery before a hearing on a preliminary injunction); *Quilling v. Funding Resource Group*, 227 F.3d 221, 233 (5th Cir. 2000) (affirming a district court's order of expedited discovery). Although the Federal Rules of Civil Procedure do not provide a standard for the Court to use in exercising its authority to order expedited discovery, courts generally use either a "preliminary-injunction-style analysis" or the "good cause standard" to determine whether a party is entitled to conduct expedited discovery. *See, e.g.*, *Greenthal v. Joyce*, No. 4:16–CV–41, 2016 WL 362312, at *1 (S.D. Tex. Jan. 29, 2016).

The Fifth Circuit has not expressly adopted either standard, but several district courts within the Fifth Circuit have used the good-cause standard. *Id.* "In determining whether good cause exists, courts often consider '(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the

4

defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.'" *Id.* at *2 (quoting *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011)). The burden of showing good cause is on the party seeking the expedited discovery, and the subject matter related to requests for expedited discovery should be narrowly tailored in scope. *St. Louis Grp.*, 275 F.R.D. at 240.

## III. DISCUSSION

The Court finds good cause to permit narrowly tailored, expedited discovery ahead of Plaintiffs filing a motion for preliminary discovery. The Court finds that: (1) Plaintiffs seek expedited discovery to develop a factual record that will aid Plaintiffs in preparing their preliminary-injunction motion, (2) portions of the proposed discovery are tailored to the issues raised in this case, and (3) Defendants and their members will not be overly burdened by responding to limited discovery of a short duration. *See Greenthal*, 2016 WL 362312, at *2.

Plaintiffs are not currently requesting any discovery requiring Defendants to perform a traditional document collection or responsiveness and privilege review. Rather, Plaintiffs seek only discrete documents and information that Defendants should be able to assemble and produce in short order, with little burden relative to the gravity of Plaintiffs' allegations.

Moreover, Defendants' counterproposal would leave Plaintiffs without any historical information on Defendants' financial situation. The provision of only recent information is not sufficient to analyze Ponzi schemes, which are built around the continual solicitation of additional investment funds to pay off prior investors. *See, e.g.*, *Janvey v. Alguire*, 647 F.3d 585, 597 (5th Cir. 2011) (defining Ponzi scheme). Plaintiffs have raised serious concerns that Defendants have engaged in a Ponzi scheme, and the Court finds good cause to grant their request for additional historical information.

Defendants' arguments on arbitration are unavailing. First, the PSLRA allows for preliminary discovery if it would "prevent undue prejudice to" the party requesting such discovery. 15 U.S.C. 78u-4(b)(3)(B). Because of the troubling evidence against Defendants, the Court finds that Plaintiffs have sufficiently established undue prejudice here. Second, even if contractual arbitration clauses cover this dispute, the Court finds good cause to order preliminary discovery ahead of its ruling on Defendants' Motion to Compel Arbitration. (*See* Mot. Compel Arb., Dkt. 22).

However, Defendants' concern that too-broad discovery could allow Plaintiffs to engage in a fishing expedition is well-taken. (*See* Resp., Dkt. 23, at 8). For example, Plaintiffs' request for four-hour depositions gives the Court pause. As explained during the October 21 phone conference, the Court believes that two-hour depositions will provide Plaintiffs with sufficient information to prepare their preliminary-injunction motion. Four-hour depositions, on the other hand, might allow Plaintiffs to seek information beyond the scope of this matter. Accordingly, the Court will grant the preliminary discovery Plaintiffs requested in their motion for a TRO, (Mot. TRO, Dkt. 2), but declines to grant the broader discovery requested in the motion for expedited discovery, (Mot. Expedited Discovery, Dkt. 20). If, after conducting this initial discovery, Plaintiffs find that it was insufficient, they may request additional discovery from the Court pursuant to a showing of good cause.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that, in accordance with this Order, Defendants' Motion for Expedited Discovery, (Dkt. 20), is **GRANTED IN PART AND DENIED IN PART**. **IT IS FURTHER ORDERED** that the parties engage in the above-mentioned preliminary discovery on or before **November 22, 2024**. **IT IS FINALLY ORDERED** that Plaintiffs shall file its motion for a preliminary injunction or a motion for further preliminary discovery on or before **December 13, 2024**.

**SIGNED** on November 5, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE