UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| MOBILE MED WORK HEALTH SOLUTIONS, INC.; JLL VENTURES, INC.; and M-M WHS LLC, <br><br> *Plaintiffs* <br><br> v. <br><br> JOSHUA MOORE; CORY RODRIGUEZ; NFN8 GROUP, INC.; NFN8 HOLDINGS, LLC; NFN8 CAPITAL, LLC; NFN8 MEDIA, LLC; NFN8 FOUNDATION; and CRYPTOTECH HOLDINGS, LLC, <br><br> *Defendants* | CASE NO. AU:24-CV-01219-RP <br><br> PLAINTIFFS' RESPONSE TO OPPOSED MOTION TO COMPEL ARBITRATION |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' OPPOSED
MOTION TO COMPEL ARBITRATION**

Plaintiffs Mobile Med Work Health Solutions, Inc. ("Mobile Med"), JLL Ventures, Inc. ("JLL"), and M-M WHS LLC ("M-M WHS") ("Plaintiffs") file this Response to the Motion to Compel Arbitration, Dkt. 22, filed by Defendants Joshua Moore, Cory Rodriguez, NFN8 Group, Inc., NFN8 Holdings, LLC, NFN8 Capital, LLC, NFN8 Media, LLC, NFN8 Foundation, and Cryptotech Holdings, LLC ("Defendants").

### I.   INTRODUCTION

Defendants' purported business was a Ponzi scheme. Defendants fraudulently induced Plaintiffs and hundreds of other investors to invest in an enterprise that was fraudulent from the start, executing contracts expressly designed to perpetuate the fraud and protect the fraudsters. Because the contracts between the parties were fraudulent as a whole, justice requires that Defendants—the drafters of the fraudulent contracts—should

not be allowed to abuse arbitration provisions *in* those contracts to further perpetuate their fraud.

Thus, given the current state of the law regarding arbitration agreements, it is critical that the Court continue to honor the distinction between legal and contractual questions regarding the ultimate arbitrability of claims and proper exercise of the Court's equitable powers to preserve the status quo. Plaintiffs acknowledge that the Supreme Court's current case law distinguishes between challenges to the validity of the agreement to arbitrate and challenges to the contract as a whole. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70–72 (2010). And Plaintiffs acknowledge that a challenge to a contract as a whole "does not prevent a court from enforcing a specific agreement to arbitrate" because arbitration clauses are severable from the remainder of the contract as a matter of substantive federal arbitration law. *Id*. at 70. Accordingly, although the Supreme Court has never directly addressed—or even contemplated—the kind of deeply-embedded fraud at issue in this suit, Plaintiffs concede that the parties' delegation clause is severable from the fraudulent agreements, and thus the parties delegated the threshold question of arbitrability to the arbitrator.[1] *See* Dkt. 22 at 8.

But delegation of the arbitrability question only amplifies the importance of this Court's role as protector of the status quo. Defendants' motion to compel arbitration conveniently avoids that discussion. Even if the relevant clauses require that an arbitrator decide whether Plaintiffs' claims fall within their scope, the clauses do *not* delegate the

---

[1] Before an arbitrator, Plaintiffs are prepared to argue that some of the relevant arbitration clauses do not cover the merits of Plaintiffs' fraud claims, and thus those claims should be back before this Court.

issuance of provisional relief to the arbitrator. To the contrary, the specific arbitration rules *Defendants chose* for *all* their arbitration clauses recognize the validity of court-ordered provisional remedies, and documents memorializing Plaintiffs' three most recent investments expressly recognize the Court's ability to address Plaintiffs' preliminary injunction request "in aid of arbitration." Moreover, caselaw widely supports Courts' efforts to preserve the status quo. *See Amegy Bank Nat. Ass'n v. Monarch Flight II, LLC*, 870 F. Supp. 2d 441, 451 (S.D. Tex. 2012) ("The Fifth Circuit has held that a district court may issue injunctive relief to protect the status quo pending resolution of a motion to compel arbitration." (citing *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011)).

Thus, Plaintiffs do not take issue with *whether* the case should be at least temporarily stayed pending an arbitrator's decision on arbitrability. But that is not the question before the Court. Rather the question is *when* that stay should be entered. The Court has already provided its answer in its November 5, 2024 Order: after a preliminary injunction hearing. *See* Dkt. 25 at 6 ("[E]ven if contractual arbitration clauses cover this dispute, the Court finds good cause to order preliminary discovery ahead of its ruling on Defendants' Motion to Compel Arbitration."). That is, Plaintiffs' preliminary injunction application can and should be heard *before* staying this case pending arbitration. Indeed, the Court already determined that it would allow expedited discovery in anticipation of the preliminary injunction hearing at the parties' October 21, 2024 telephonic conference, and again in its November 5, 2024 Order, in which it ruled on the scope of expedited discovery that would be allowed "to prepare [the] preliminary-injunction motion." Dkt. 25 at 6.

As the Fifth Circuit explained when it upheld court-issued injunctive relief pending arbitration, it would "create a harsh procedural rule"—and defy the entire purpose of urgent relief—if district courts were forced to "stop everything and consider the motion to compel arbitration." *Janvey*, 647 F.3d at 594 (quotation omitted). As Plaintiffs have dug deeper into the publicly-available details of Defendants' business, both the risk of asset dissipation and the concomitant need for Court-ordered preliminary relief have only increased. Without the baseline protection of a preliminary injunction, Plaintiffs risk losing the very assets that propel this suit. *See Janvey*, 647 F.3d at 600 (holding that the "dissipation of the assets that are the subject of this suit . . . would impair the district court's ability to grant an effective remedy" (quotation omitted)).

The Court's task here is to protect Plaintiffs' and other investors' interests, regardless of whether some of the disputes arising out of Defendants' apparently widespread defaults must ultimately be arbitrated.[2] Otherwise, "[a]rbitration can become a 'hollow formality' if parties are able to alter irreversibly the status quo before the arbitrators are able to render a decision in the dispute." *Amegy Bank Nat. Ass'n*, 870 F. Supp. 2d at 452 (quoting *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1053 (2d Cir. 1990)). For arbitration to be effective, there must be something to arbitrate over. Both the arbitration agreements and settled law permit this Court to

---

[2] As noted above, Plaintiffs contend that disputes relating to Defendants' fraud in connection with Plaintiffs' first six investments (including Defendants' failure to pay Plaintiffs the $1,020,000 they were obligated to pay to repurchase miners associated with Plaintiffs' first investment) are not subject to arbitration. In addition, Plaintiffs have now learned that at least some of Defendants' earliest investors executed contracts *without* arbitration clauses and *with* forum selection clauses fixing venue in courts of appropriate jurisdiction within Travis County, Texas.

4

protect the status quo and ensure that arbitration (or litigation) is meaningful.

## II.   ARGUMENT

### A. This Court has discretion to issue a preliminary injunction regardless of whether it sends the arbitrability question to the arbitrator.

Courts frequently and consistently issue preliminary injunctive relief pending arbitration. In *Janvey* the Fifth Circuit held that a district court "can grant preliminary relief before deciding whether to compel arbitration." 647 F.3d at 593–95. Like Plaintiffs here, the *Janvey* plaintiffs alleged that an investment company perpetuated a Ponzi scheme by luring investors with false promises of high returns.[3] They sought to enjoin the company by freezing its accounts and thus preserving the value of its assets. The Fifth Circuit recognized the urgency of plaintiffs' request for provisional relief, and thus refused to allow the pending motion to compel arbitration to interfere. Instead, the Fifth Circuit determined that the district court had equitable powers to preserve the status quo, explaining that "the congressional desire to enforce arbitration agreements would frequently be frustrated if the courts were precluded from issuing preliminary injunctive relief to preserve the status quo pending arbitration and, ipso facto, the meaningfulness of the arbitration process." *Id*. at 595 (quotation omitted).

Since *Janvey*, this court has adopted the view that permitting courts to order provisional relief promotes the arbitration process. *See Lynch v. Tesla, Inc.*, 2022 WL 4295295, at *2 (W.D. Tex. Sept. 16, 2022) (holding that the court had authority to rule on

---

[3] In *Janvey*, Allen Stanford and his companies promised "double-digit" annualized returns of between 11.5% and 16.5%. *See* https://www.sec.gov/files/litigation/complaints/2009/stanford-first-amended-022709.pdf. By contrast, Defendants here continue to promise annualized returns of 21% and have in the past promised returns of 24% and higher.

a party's protective order before addressing the motion to dismiss and compel arbitration). And other federal courts in the state have followed suit. *N. Am. Deer Registry, Inc. v. DNA Sols., Inc.*, 2017 WL 1426753, at *2 (E.D. Tex. Apr. 21, 2017) ("A district court can grant preliminary relief before deciding whether to compel arbitration."); *Amegy Bank Nat. Ass'n*, 870 F. Supp. 2d at 451–52 (holding that a court may issue injunctive relief pending arbitration so that the parties are not able to "continue maneuvering to the disadvantage of each other outside the arbitration model").

If that's not enough, "most circuits that have addressed the issue have held that a district court may enter injunctive relief to preserve the status quo pending arbitration." *Amegy Bank Nat. Ass'n*, 870 F. Supp. 2d at 451 (citing cases); *see also Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 51 (1st Cir. 1986) ("[A] district court can grant injunctive relief in an arbitrable dispute pending arbitration, provided the prerequisites for injunctive relief are satisfied."); *Blumenthal*, 910 F.2d at 1051–54 (same); *Ortho Pharm. Corp. v. Amgen, Inc.*, 882 F.2d 806, 812 (3d Cir.1989) (same); *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 376 (4th Cir. 2012) (same); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano*, 999 F.2d 211, 214–15 (7th Cir. 1993) (same). Caselaw on this topic widely supports a court's ability to issue urgent relief under these circumstances.

**B. The JAMS rules *support* the Court's authority to grant injunctive relief.**

Kicking the can down the road at this stage would not only deprive Plaintiffs of relief that is consistent with binding caselaw, but it would also stray from the explicit language the parties agreed to in the contracts at issue. When construing an arbitration clause, courts must "give effect to the contractual rights and expectations of the parties"

6

meaning that "as with any other contract, the parties' intentions control." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682, 684 (2010) (internal citations omitted) ("It falls to courts and arbitrators to give effect to these contractual limitations, and when doing so, courts and arbitrators must not lose sight of the purpose of the exercise: to give effect to the intent of the parties.").

Defendants admit that all of the relevant arbitration clauses incorporate by reference the JAMS rules. *See* Dkt. 22 at 4-5, 7. There are two versions of arbitration clauses in the total eighteen agreements. The first version states that: "Arbitration will be conducted confidentially by a single arbitrator in accordance with the rules of the Judicial Arbitration and Mediation Services ("JAMS"), which are hereby incorporated by reference." *See e.g.*, Exh. 1 at ¶ 7d, 7f. The second version states in pertinent part: "The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules." *See e.g.*, Exh. 2 at ¶ 11. By incorporating the JAMS rules, the parties agreed to the language in JAMS rule 23(e), which contains a carve out authorizing parties to seek provisional relief in court:

> Any recourse by a Party to a court for interim or provisional relief shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

JAMS rule 23(e).

Thus, the JAMS rules expressly support Plaintiffs' request for court-issued injunctive relief, and Defendants preference to avoid court involvement entirely is irrelevant. The arbitration clause must be construed as written. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("[A]rbitration is simply a matter of

contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration."). Because the JAMS rules expressly contemplate the Court's issuance of preliminary injunctive relief, the parties' incorporation of those rules make room for this Court to do so while the motion to compel arbitration is pending.

### C. The parties expressly authorized provisional relief from the Court.

In transactional documents memorializing Plaintiffs' final three investments, the parties expressly agreed to language allowing court-issued provisional relief "in aid of arbitration." The relevant arbitration clauses state specifically: "This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction." *See, e.g.*, Exh. 2 at 11. "Where the parties to an arbitration agreement specifically have excepted a certain type of claim from mandatory arbitration, it is the duty of courts to enforce not only the full breadth of the arbitration clause, but its limitations as well." *State of N.Y. v. Oneida Indian Nation of New York*, 90 F.3d 58, 62 (2d Cir. 1996).

Here, the contract plainly states that the parties do not have to go to arbitration to get provisional relief that is in aid of arbitration. When the parties have contemplated beforehand that certain claims are not subject to mandatory arbitration, the Fifth Circuit strictly honors those terms. *See Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 283 (5th Cir. 2019) (declining to rewrite arbitration clause that included a carve out for actions seeking injunctive relief).

8

To the extent Plaintiffs are ultimately forced to arbitrate some of their claims, their application for preliminary injunction is "in aid of arbitration." Specifically, Plaintiffs seek interim relief from the Court that will, among other things, preserve Plaintiffs' ability to obtain meaningful relief from Defendants. And if Plaintiffs' interpretation of the facts is correct, that interim relief is likely all that stands in the way of complete dissipation of Defendants' assets. In other words, Plaintiffs' preliminary injunction application is "in aid of arbitration" because it increases the likelihood that there will ultimately be assets over which to arbitrate (or litigate). As courts have explained, the purpose of granting interim relief pending arbitration is to "ensure that the parties get what they bargained for—a meaningful arbitration of the dispute." *N. Am. Deer Registry, Inc.*, 2017 WL 2402579, at *4 (citing *Blumenthal*, 910 F.2d at 1053)). "[I]f the court is unable to order injunctive relief, arbitration may become moot because the harm to [the plaintiff] would be beyond repair." *Id.*; *see also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Bushaw*, No. 4:04-CV-416-A, 2004 WL 1238968, at *2 (N.D. Tex. June 4, 2004) (holding that injunctive relief was proper where the defendants would otherwise be able to covert property from the plaintiffs' ownership to their own benefit). Plaintiffs' preliminary injunction application seeks to maintain the status quo, is in aid of arbitration, and is thus consistent with the terms of the parties' agreements.[4]

---

[4] Plaintiffs have already sought a preliminary injunction in this matter as part of their original Application for Temporary Restraining Order. Dkt. 2. However, Plaintiffs will file a renewed Application for Preliminary Injunction as the Court requested, once expedited discovery has been completed.

## III. CONCLUSION

Defendants' motion to compel arbitration misidentifies the crux of the dispute between the parties by characterizing the delegation clause as one that puts all claims before the arbitrator. But that characterization ignores the prevailing caselaw and the parties' intent to allow the parties to seek provisional remedies in court.  Plaintiffs' position aligns with precedent by seeking such relief pending arbitration.  Here, where the equitable outcome of the case hinges on the urgency necessary to maintain Defendants' financial position, the Court should not avoid addressing the preliminary injunction question.

Accordingly, Plaintiffs request the Court consider Plaintiff's request for preliminary injunctive relief, as such interim provisional relief is proper pending arbitration.

Date:  November 12, 2024

Respectfully submitted,

**STEPTOE** LLP

*/s/ David Isaak*
Hector R. Chavez
Texas State Bar No. 24078335
David Isaak
Texas State Bar No. 24012887
*Admitted Pro Hac Vice*
Paul Stancil
Texas State Bar No. 00797488
*Admitted Pro Hac Vice*
717 Texas Avenue, Suite 2800
Houston, Texas 77002
Telephone (713) 221-2300
hchavez@steptoe.com
disaak@steptoe.com
pstancil@steptoe.com

Ashwin Ram
California State Bar No. 277513
*Admitted Pro Hac Vice*
633 West Fifth Street, Suite 1900
Los Angeles, California 90071
aram@steptoe.com

-and-

**THE DURRANT LAW FIRM, APC**

John S. Durrant
California State Bar No. 217345
*Admitted Pro Hac Vice*
2337 Roscomare Rd., Suite 2180
Los Angeles, California 90077
Telephone: (424) 273-1962
john@durrantlawfirm.com

**COUNSEL FOR PLAINTIFFS
MOBILE MED WORK HEALTH SOLUTIONS,
INC.; JLL VENTURES, INC.; AND
M-M WHS LLC**

## CERTIFICATE OF SERVICE

I certify that on November 12, 2024, a true and correct copy of the foregoing document has been served on all counsel of record via the Court's CM/ECF system.

　　　　　　　　　　　　　　　 /s/ David Isaak
　　　　　　　　　　　　　　　David Isaak