**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| MOBILE MED WORK HEALTH SOLUTIONS, INC., *et al.*, | |
| *Plaintiffs*, | CIVIL ACTION NO. 1:24-CV-01219-RP |
| v. | **REPLY TO RESPONSE (AND NON-OPPOSITION) TO MOTION TO COMPEL ARBITRATION** |
| JOSHUA MOORE, *et al.*, | |
| *Defendants*. | |

**Argument**

*1. The Headline: Plaintiffs offer no defense to Defendants' motion to compel arbitration.*

Despite Plaintiffs filing this lawsuit rather than initiating arbitration, and despite Plaintiffs not consenting to Defendants' motion when it was filed, the most striking feature of Plaintiffs' response is that Plaintiffs concede that this matter must be sent to arbitration. *See* Resp. at 2-3 Plaintiffs further "concede that . . . the parties delegated the threshold question of arbitrability to the arbitrator." *Id*. at 2. Plaintiffs also "do not take issue with" staying this case "pending an arbitrator's decision on arbitrability." *Id*. at 3.[1] Accordingly, because "the making of the agreement for arbitration [and] the failure to comply therewith is not in issue, the [C]ourt shall make an order directing the parties to proceed to arbitration." 9 U.S.C. §4.

*2. Plaintiffs cannot delay the Order compelling arbitration.*

Relying on case law that allows a court in exceptional circumstances to provide preliminary injunctive relief in a case that may otherwise be arbitrable, Plaintiffs maintain that their arbitration obligation should be ignored, at least for a time, and purport to direct the Court that "[t]he Court's task here is to protect Plaintiffs' and other investors' interests" by freezing Defendants' assets to prevent their "complete dissipation." Resp. at 4, 9.

Plaintiffs' position is misguided for at least three reasons. To start, injunctive relief prior to deciding whether to compel arbitration is discretionary and premised on the assumption that there will or may be a time-consuming fight over whether the parties are required to arbitrate. When there is no dispute before the court about arbitrability—and there is no such dispute before the Court here—delaying arbitration to litigate a motion for preliminary relief is unwarranted. In *Lynch v. Tesla, Inc.*,

---

[1] Plaintiffs argue in footnotes that "[b]efore the arbitrator," they will argue that certain of their claims may not be arbitrable, Resp. at n. 1-2, but they offer no substantive argument in support of this bald conclusion (because there is no merit to the conclusion).

for example, Tesla moved to compel arbitration of former employees' WARN claims and have their federal case dismissed as a result. 2022 WL 16681096, at *1 (W.D. Tex. Nov. 2, 2022) (Pitman, J.). Like Plaintiffs, the former employees in *Lynch* did not challenge the arbitrability of their claims but "repeatedly made clear" their position that this Court should delay arbitrations to decide first whether to afford them preliminary relief. *See id.* The Court squarely rejected this argument:

> Under Fifth Circuit precedent, a court may grant preliminary relief before deciding whether to compel arbitration in order to preserve the status quo. *Janvey v. Alguire*, 647 F.3d 585, 594 (5th Cir. 2011). However, this decision is discretionary—a court is not *required* to issue preliminary relief. In the instant case, the Court ordered briefing on the preliminary relief under the assumption that Plaintiffs would object to the report and recommendation and could thus take months to fully decide the motion to dismiss. However, Plaintiffs did not object, and the Court was left with an unopposed recommendation to dismiss the case. Given that no party was opposing a recommendation which divested the Court of jurisdiction, it would have been improper to issue preliminary relief knowing that the case would be dismissed.

*Id.* at *3; *see also Grasso Enter., LLC v. CVS Health Corp.*, 143 F. Supp.3d 530, 543 (W.D. Tex. 2015) (declining to rule on a motion for preliminary injunction because claims were arbitrable, and finding persuasive the reasoning that "'the judicial inquiry requisite to determine the propriety of injunctive relief necessarily would inject the court into the merits of issues more appropriately left to the arbitrator'" (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey,* 726 F.2d 1286, 1292 (8th Cir. 1984)).

Plaintiffs' attempt to bolster their position (which was rejected in *Lynch)* by analogizing this case to pre- and post-*Janvey* Texas district court cases awarding injunctive relief. The analogy falls flat because these cases do not address, much less support, the sort of relief Plaintiffs seek. *See* Resp. at 9 (citing *N. Am. Deer Registry, Inc. v. DNA Solutions, Inc.,* 2017 WL 1426753, at *4 (E.D. Tex. Apr. 21, 2017); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Bushaw*, 2004 WL 1238968, at *2 (N.D. Tex. June 4, 2004)). While these cases recognized that a court has the power to order provisional relief in cases that may or will go to arbitration, neither involved requests to freeze assets so that they

2

would be available to pay a potential future monetary judgment. Instead, the injunctive relief at issue in those cases was aimed at restricting actions that could cause injuries difficult to measure and not reversible by a subsequent monetary award. For example, *North American Deer Registry* involved requests for injunctive relief based on alleged misuse of confidential information, including trade secrets. *See* 2017 WL 1426753, at *1. Plaintiffs similarly distort the relief ordered in *Bushaw* by characterizing its holding as blessing injunctive relief where a plaintiffs' property could be used for the defendants' benefit. *See* Resp. 9. But *Bushaw* again involved restrictions on misusing information and documents premised on the potential for harm that plaintiffs "would be unable to fully define . . . by a dollar amount." 2004 WL 1238968, at 1–2 (prohibiting defendant-former employees from soliciting past clients, using plaintiffs' client information, and destroying records obtained from the plaintiff-former employer).

Finally, it is far more than a technical distinction between a party seeking (a) targeted injunctive relief to prevent a party from misusing information versus (b) a freezing order. The law discourages federal courts from issuing the latter, which is what Plaintiffs seek here, in private disputes. *See Netsphere, Inc. v. Baron*, 703 F.3d 296, 309 (5th Cir. 2012) (explaining that "'courts of equity will not, as a general matter, interfere with a debtor's disposition of his property at the instance of a nonjudgment creditor'" (quoting *Grupo Mexicano de Desarrollo, S.A., v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 329 (1999)). This restraint is magnified in the arbitration context because the parties have agreed to have their disputes resolved by a private arbitrator, not by a federal court. *See ContiChem LPG v. Parsons Shipping Co.*, 229 F.3d 426, 430 (2d Cir. 2000) ("As a preliminary matter, we agree with the district court's determination that because ContiChem did not have a judgment against Parsons, the court had no equitable power to issue a preliminary injunction preventing any entity from disposing of Parsons' assets pending arbitration of the dispute").

All told, Plaintiffs have known since their dispute with Defendants first arose that the dispute needed to be resolved in arbitration and that, if necessary, the arbitrator could award them provisional relief. They have known since then that they have no defense to avoid arbitration. Nothing justifies Plaintiffs delaying arbitration in an attempt to gain leverage over Defendants through the discouraged procedural vehicle of an asset-freezing injunction.

3. *Neither the parties' arbitration agreements nor the JAMS rules support delaying the Order compelling arbitration.*

Plaintiffs' last-ditch effort to keep alive their request to freeze Defendants' assets (Resp. at 4, 9) is to argue that the Court should grant this request because it is empowered to do so either by the JAMS arbitration rules (which are incorporated into the parties' arbitration agreements) or a few arbitration agreements that allow parties to seek "provisional remedies in aid of arbitration." This argument is rings hollow.

Starting with the arbitration rules, the last sentence of JAMS Rule 24(e) does not encourage or authorize a court to provide provisional relief, but merely provides that a party seeking such relief is not waiving or forfeiting a right to arbitrate. More significantly, the first sentence of Rule 24(e) speaks directly to the proper forum for seeking provisional relief: "The Arbitrator may grant whatever interim measures are deemed necessary, including injunctive relief and measures for the protection or conservation of property and disposition of disposable goods." JAMS Rule 24(e); *see also* JAMS Rule 24(d) ("In addition to a Final Award or Partial Final Award, the Arbitrator may make other decisions, including interim or partial rulings, orders and Awards"). In other words, the JAMS Rules explicitly contemplate that decisions on whether to award provisional relief will be made in arbitration, not in court. Indeed, the JAMS Rules even create a mechanism for emergency provisional relief before an arbitrator is appointed. JAMS Rule 2(c) ("(i) A Party in need of emergency relief

4

prior to the appointment of an Arbitrator may notify JAMS and all other Parties in writing of the relief sought and the basis for an Award of such relief. . . . (ii) JAMS shall promptly appoint an Emergency Arbitrator to rule on the emergency request.").

Plaintiffs' position is not improved by the language in a few arbitration clauses that those clauses "shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction." Plaintiffs here are trying to avoid and delay arbitration, not trying to aid it. Plaintiffs are not in a position where they need a provisional remedy from this Court because it is unavailable in arbitration; as explained above, the JAMS Rules expressly authorize provisional remedies.

Plaintiffs' reliance on *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274 (5th Cir. 2019), and *Amegy Bank N.A. v. Monarch Flight II, LLC*, 870 F.Supp.2d 441 (S.D. Tex. 2012), is also misplaced. Just as the *Archer* court refused to narrow an arbitration carve-out for "actions seeking injunctive relief" to mean only "actions for injunction in aid of an arbitrator's award," 935 F.3d at 283, this Court cannot broaden "remedies in aid of arbitration" to mean any injunctive remedies Plaintiffs desire before arbitrating. *Amegy* similarly involved an arbitration carve-out allowing a court "to provide injunctive relief before, during, or after arbitration," which—unlike the language Plaintiffs point to here—included no requirement that the injunctive relief be "in aid of" any arbitration. 870 F. Supp.2d at 453. Indeed, *Archer* and *Amegy* demonstrate that if Plaintiffs wanted to avoid arbitration for any injunctive relief requests, it would have been remarkably easy to reword the arbitration clauses to reflect that choice. It is Plaintiffs, not Defendants, that want to rewrite the parties' arbitration agreements, but that is something this Court cannot do.

5

Finally, in light of the disfavor courts have for prejudgment asset freezing orders, "remedies in aid of arbitration" cannot be read to encompass preliminary relief to create security for a potential arbitration award. As Judge Jordan concluded in a parallel context:

> Admiralty courts may in appropriate cases apply equitable principles, [citation omitted], but the Supreme Court has not allowed federal courts to order the pre-judgment restraint of assets under their traditional equity powers. Against this backdrop, I would not read the phrase "interim measure of protection" as permitting an order requiring the posting of pre-judgment security for a pending arbitral proceeding. With these thoughts, I join the court's opinion.

*SCL Basikisk AG v. Agribusiness United Savannah Logistics*, LLC, 875 F.3d 609, 622-23 (11th Cir. 2017) (Jordan, J., concurring) (citations omitted) (citing *Grupo Mexicano*, 527 U.S. at 332; *De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 222–23 (1945)).

## Conclusion

For the reasons stated in Defendants' motion and this reply, the Court should promptly compel Plaintiffs to arbitrate all their claims in this case. There is no legal reason to delay the entry of such an order.

Dated: November 19, 2024

Respectfully submitted,

<u>*/s/ Christopher R.J. Pace*</u>
Christopher R.J. Pace
crjpace@winston.com
Texas State Bar No. 789534
Winston & Strawn LLP
2121 North Pearl Street, Suite 900
Dallas, TX 75201
Telephone: 214.453.6500
Facsimile:  214.453.6400

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of November, 2024, I caused the foregoing document to be electronically filed using the CM/ECF system, which automatically sends notification of such filing to all counsel of record.

*/s/ Christopher R.J. Pace*
Christopher R.J. Pace