# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| MOBILE MED WORK HEALTH SOLUTIONS, INC., *et al.*, | |
| *Plaintiffs*, | CIVIL ACTION NO. 1:24-CV-01219-RP |
| v. | **REPLY ON OPPOSED MOTION TO COMPEL DISCOVERY** |
| JOSHUA MOORE, *et al.*, | |
| *Defendants*. | |

**Argument**

The audacity of Plaintiffs' response in the context of this litigation is surprising. Plaintiffs have pursued discovery requests against Defendants that have led to Defendants producing nearly thirteen thousand pages of documents, and Plaintiffs have not produced a single page of documents. Still, Plaintiffs claim that Defendants are seeking too much discovery from Plaintiffs.[1]

Despite Plaintiffs pursuing all of this discovery requiring Defendants to produce nearly thirteen thousand pages of documents, requiring Defendants to provide detailed information about over ten thousand assets and thousands of transactions in *addition* to Plaintiffs deposing two Defendants (to say nothing of the two additional depositions Plaintiffs are now seeking), Plaintiffs argue that Defendants should get no document discovery from them *because* Defendants can take two depositions.

Finally, despite Plaintiffs offering no defense against arbitrating their claims and conceding that they must submit their claims to an arbitrator, *see* Dkt. 28 (Pls.' Opp'n to Mot. to Compel Arbitration) at 3, Plaintiffs insist that Defendants should not get any document discovery before that arbitration begins—even though Plaintiffs are still pursuing even more discovery from Defendants while seeking to delay being compelled to arbitration.

Here is the reality: Defendants are seeking to compel a limited document production from Plaintiffs—financial statements and bank account statements.[2] In refusing to produce these financial statements and bank statements, Plaintiffs contradict positions they have taken before this Court. Plaintiffs now claim that requests for such documents are "broad" and that producing

---

[1] Capitalized terms not defined in this Reply are defined in the Motion and carry the same definitions as in the Motion. *See* Dkt. 38 (Mot.).
[2] Defendants served three requests for production, and Plaintiffs stated that they had not located documents responsive to the third request. *See* Dkt. 38-2 (Pls.' Objs. & Resps.) at 10–11.

1

them would be burdensome. *See* Dkt. 39 (Opp'n) at 3. But when Plaintiffs sought such documents (*and much more*) from Defendants, Plaintiffs maintained that their requests were not "broad," but instead "targeted" and "narrowly tailored." Dkt. 24 (Pls.' Reply ISO Mot. for Expedited Discovery) at 2; Dkt. 20 (Pls.' Mot. for Expedited Discovery) at 15. Plaintiffs stressed to the Court that such documentation "can be collected and produced quickly and easily." Dkt. 20 at 3. Plaintiffs also argued that such documentation "should be readily available and close at hand"—indeed, that it should be available "at the touch of a button." *Id.* at 4; *see also* Dkt. 24 at 2–3. Plaintiffs do not acknowledge—much less justify—their inconsistent representations about the breadth of requests for financial and bank statements and the burdens of producing them.

Defendants have already explained the relevance and significance of these requests for production, Dkt. 38 at 3–5, which Plaintiffs feign to not understand, *see* Dkt. 39 at 5–6. But Plaintiffs' own Complaint and the agreements they submitted with their TRO application demonstrate the obvious significance: The agreements show that of the nine sale-leaseback transactions at issue, Mobile Med entered into seven of them, JLL into one of them, and M-M into the last one. Dkt. 2-2 (Lo Decl.), at Exs. A–F. By the time Plaintiffs filed their Complaint, however, M-M held seven of these transactions, with JLL and Mobile Med holding the remaining two. Dkt. 1 (Compl.) ¶ 23. The documents Defendants requested should reflect the terms of those transfers, including the discount discussed below, which should in turn reflect Plaintiffs' knowledge of risks associated with the underlying transactions. These statements should also reflect each Plaintiff's out-of-pocket costs for their respective transactions.

Plaintiffs are incorrect in claiming requested documents are now not discoverable because Dr. Lo provided deposition testimony conveying the "same information" regarding "Plaintiffs' accounting treatment of their sale-leaseback investments." *See* Dkt. 39 at 4–5. To borrow a phrase

2

from Plaintiffs, Dr. Lo's answers at deposition "raise[d] far more questions than they answered." *See* Dkt. 40 (Pls. Mot. to Compel Discovery) at 5. Dr. Lo testified that one Plaintiff transferred its interests in certain transactions to another Plaintiff at a discount to the principal amounts of those transactions. *See* Defs. Mot. to Seal, Ex. A (Lo Rough Dep. Tr.) at 11–14.[3] But Dr. Lo disclaimed knowledge about how the interests in those transactions had been accounted for at any time. *See id.* at 15–16. Dr. Heshmat, Plaintiffs' other principal, was similarly unable to testify to Plaintiffs' "accounting treatment" for their sales-leaseback transactions.[4] And, of course, Defendants could not use the documents Defendants had requested to challenge or even refresh Plaintiffs' principals' recollection of events because Defendants did not have the financial or bank statements to use during their depositions.

Plaintiffs could have pled this case as a simple breach-of-contract claim against the parties with which they contracted. Instead, they elected to plead a racketeering and fraud case against eight Defendants. In so doing, Plaintiffs put at issue *their* knowledge (of both the underlying facts and risks) and *each Plaintiff's* alleged out-of-pocket costs (the traditional measure of fraud damages). *See, e.g.*, *In re Briese*, 196 B.R. 440, 454 (W.D. Wisc. Bk. 1996) ("A plaintiff may not recover for fraud if he ignores a known or obvious risk").

Plaintiffs' other investments and business transactions, particularly those related to cryptocurrencies and cryptocurrency companies, are also of obvious significance. They will shed light on Plaintiffs' investment sophistication and their knowledge of cryptocurrencies (and their

---

[3] Defendants are filing a Motion to Seal attaching as Exhibit A excerpts from the rough transcript of Dr. Lo's deposition cited herein. *See* Dkt. 27 (Protective Ord.) at 4 (providing that transcripts received within the last 30 days shall be treated as "For Counsel Only"). The testimony in Exhibit A includes more detailed discussion regarding the transfer and values referenced above, which have been omitted from this filing to comply with Local Rule CV-5.2.

[4] Defendants took Dr. Heshmat's deposition today and do not yet have access to a rough transcript of her deposition.

3

risks). *See, e.g.*, *Zobrist v. Coal-X, Inc.*, 708 F.2d 1511, 1516 (10th Cir. 1983) (identifying "the sophistication and expertise of the plaintiff in financial and securities matters" as a "relevant factor[] in determining whether [a securities plaintiff's] reliance was justified"); *In re Briese*, 196 B.R. at 453 ("The Court must examine all of the facts available to the plaintiff, a large and sophisticated corporation, and determine whether the plaintiff should have realized that there might be some problem in extending credit to the debtors in this case.").

Nor can Plaintiffs avoid this issue by miscasting the *Zorbist* decision as somehow limiting the justifiable reliance inquiry to cases in which the parties seeking to prove securities fraud were committing "comparable" fraud. *See* Dkt. 39 at 7 (quoting 708 F.2d at 1516) (arguing that the requested information is not discoverable because "Plaintiffs are not the ones accused of committing a fraud"). Plaintiffs' selective quotation from *Zobrist* ignores both the very next sentence, which identifies recklessness as the standard applicable to assessing justifiable reliance, as well as the *Zorbist* court's subsequent discussion of several factors relevant to determining whether reliance was justifiable under that standard. *See* 708 F.2d at 1516–19. Nothing in the following pages explaining and applying those factors, which include the sophistication of the plaintiffs in similar matters, suggests that these factors are relevant only when the plaintiffs are also alleged to have violated federal securities laws. *See id.*

Finally, Plaintiffs suggest that the limited discovery Defendants seek would be appropriate for merits discovery in arbitration, but it is too much for resolving only a preliminary injunction in court. Defendants, of course, would be happy for this entire case to be sent to arbitration immediately, as it should be. But if there will be preliminary injunction briefing and a hearing, Defendants are entitled to the limited document discovery they seek to gather more information on the significant issues raised herein and in Defendants' motion. These issues are not only

4

significant to the merits of Plaintiffs' claims and Defendants' defense to those claims but are also significant to evaluating the "balance of equities" (which can include delay in moving for a preliminary injunction) and irreparable harm (which generally cannot be shown when any alleged injury can be addressed by monetary remedies). *See, e.g., Goal Acquisition Corp. v. Digital Virgo*, 2024 WL 1078431, at 4 (W.D. Tex. Mar. 12, 2024) (Pitman, J.) ("[T]he equities lie against granting an injunction" where "[i]f the Court declines an injunction, [the plaintiff] may still recover damages in arbitration"); *Beatstars, Inc. v. Space Ape Ltd.*, 624 F. Supp. 3d 681, 687 (W.D. Tex. 2022) ("[D]elay in moving for a preliminary injunction is often cited as a reason for denying a preliminary injunction" (citation omitted)); *Ramsey v. Sheet Pile, LLC*, 2022 WL 4000714, at *6 (W.D. Tex. Sept. 1, 2022) ("Cases have interpreted 'irreparable injury' to exist only if it cannot be undone through monetary remedies.").

## Conclusion

This Court should compel Plaintiffs to produce documents and electronically stored information in response to Defendants' first two targeted document requests.

|  |  |
|---|---|
| Dated: December 3, 2024 | Respectfully submitted,<br><br>*/s/ Christopher R.J. Pace*<br>Christopher R.J. Pace<br>crjpace@winston.com<br>Texas State Bar No. 789534<br>Winston & Strawn LLP<br>2121 North Pearl Street, Suite 900<br>Dallas, TX 75201<br>Telephone: 214.453.6500<br>Facsimile:  214.453.6400<br><br>*Attorneys for Defendants* |

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 3rd day of December, 2024, I caused the foregoing document to be electronically filed using the CM/ECF system, which automatically sends notification of such filing to all counsel of record.

                                               */s/ Christopher R.J. Pace*
                                               Christopher R.J. Pace