# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| MOBILE MED WORK HEALTH SOLUTIONS, INC., *et al.*, | |
| Plaintiffs, | CIVIL ACTION NO. 1:24-CV-01219-RP |
| v. | **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY** |
| JOSHUA MOORE, *et al.*, | |
| Defendants. | |

**Introduction**

Plaintiffs again come to Court seeking more and broader discovery. Plaintiffs maintain that they need more information at this early stage despite receiving in three weeks nearly 13,000 pages of documents; detailed information on over ten thousand mining assets; detailed information on thousands of transactions; information about each of the facilities from which Defendants operate and the associated costs; agreements from Defendants' sale-leaseback transactions with hundreds of other customers; public key information showing activity associated with cryptocurrency wallets; Defendants' financial statements; and four hours on the record with Defendants Moore and Rodriguez. The Court should deny Plaintiffs' latest request and allow the parties to proceed with what Defendants have provided and offered.[1]

**Arguments**

1. **Plaintiffs cannot compel production of additional wallet information that is not in Defendants' possession, custody, or control.**

Plaintiffs seek additional historical personal wallet information that Mr. Moore cannot see or access through his account, and which Plaintiffs present no evidence is otherwise within Defendants' control. Mr. Moore provided the only public key accessible for his personal account. *See* Ex. A (Moore Dep. Excerpts) 25:11–25:15.[2] Mr. Moore testified that he did not think he had

---

[1] Defendants maintain their position that this matter should be sent promptly to arbitration, especially given that Plaintiffs have not raised any defense against being compelled to arbitration.

[2] Defendants are filing a Motion to Seal attaching as Exhibit A excerpts from the transcript of Mr. Moore's deposition cited herein. *See* Dkt. 27 (Protective Ord.) at 4 (providing that transcripts received within the last 30 days shall be treated as "For Counsel Only"). The testimony in Exhibit A includes more detailed discussion these accounts, which has been omitted from this filing to comply with Local Rule CV-5.2.

1

had any other wallets with this account but explained how the relevant exchange/platform can change or re-assign public keys associated with an account. *See id.* at 22:21–23:12. Based on Plaintiffs' counsel's representations about the activity associated with the public key Mr. Moore identified and his own testimony regarding his personal trading activity, Mr. Moore inferred that there may have been other, older public keys that had previously been assigned to this account. *See id.* at 25:2–18. Afterward, Mr. Moore reached out to that platform to ask whether it could identify previous public keys associated with this account. *See* Ex. B (Email); Ex. C (Moore Decl.) ¶¶ 7–9.[3] He was advised that his account manager would "see what can be done" and that this manager's internal inquiry would require assistance from another team. *See* Ex. B (Email). Mr. Moore has yet to receive any further update. *See* Ex. C (Moore Decl.) ¶ 10.

Plaintiffs cannot obtain an order compelling Defendants to produce information that is not in Defendants' possession, custody, or control. *See Horton v. Texas Fed'n for Child. Pac, Inc.*, 2024 WL 68572, at *6 (N.D. Tex. Jan. 5, 2024) (citing Fed. R. Civ. P. 34(a)). Plaintiffs have the burden of showing that Defendants have control over the wallet information whose production Plaintiffs seek to compel. *Nvision Biomedical Techs., LLC v. Jalex Med., LLC*, 2015 WL 13049356, at *13 (W.D. Tex. Dec. 23, 2015), *aff'd,* No. 5:15-CV-284 RP, 2016 WL 8259076 (W.D. Tex. Feb. 1, 2016), and *aff'd,* No. 5:15-CV-284 RP, 2016 WL 8285637 (W.D. Tex. Feb. 1, 2016). "Documents are considered to be under a party's control for discovery purposes when that party has the right, authority, or practical ability to obtain the documents from a nonparty to the suit." *Horton*, 2024 WL 68572, at *6. The evidence to date shows that Mr. Moore does not have

---

[3]   Defendants are also filing Exhibits B and C as attachments to their Motion to Seal for confidentiality reasons discussed in that Motion. Exhibits B and C include relevant details that have been omitted from this filing to comply with Local Rule CV-5.2.

2

this information, cannot independently access this information, could not readily obtain this information from others, and may not be able to obtain this information at all. Without any evidence establishing Defendants' ability to obtain this information, Plaintiffs' motion to compel its production should be denied. *See id.* (denying a motion to compel production of documents where the movant failed to provide such evidence).

Plaintiffs have also offered no evidence to demonstrate the significance of transactions Mr. Moore conducted through his personal account to their claims involving their sale-leaseback transactions with several NFN8 Defendants. There is no need to impose further burdens on Defendants so that Plaintiffs can continue their discovery fishing expedition.

## 2. Plaintiffs' fifth request for production remains unduly burdensome and disproportional, particularly at this early stage.

Plaintiffs requested production within two days of "any and all transaction data" relating to "any and all" activity that any Defendant has ever had on any cryptocurrency exchange or platform on which any Defendant has ever had an account. *See* Dkt. 40 (Mot.) at 5. Now for the first time, Plaintiffs limit one aspect of the unbounded, all-information request to three years' worth of all transaction data for every defendant on every exchange and platform. *See id.* at 6 n.7 ("While the original request did not provide a date range, Defendants [*sic*] now limit their request for exchange data to the past three years."). Plaintiffs persist, however, in presenting a misleading picture of the burden associated with providing three years' worth of all transaction data from all exchanges and platforms.

In error but not in doubt, Plaintiffs insist that their request was effectively burdenless because "Defendants again undoubtedly have push-button access to their transaction records on the relevant exchanges and other platforms." *Id.* at 10. The only support Plaintiffs offer in support

3

of their blanket assertion is that *one* of the platforms Plaintiffs identified in their document request can be configured to allow external access to an accountholder's API. *See id.* at 5, 10. Plaintiffs do not—and cannot—substantiate their assertion about burdenless, "push-button" provision of *all* transaction activity on *all* the platforms and exchanges that Plaintiffs insist that they need. Instead, Defendants understand that providing all data associated with two exchanges/platforms that Plaintiffs identified and that at least one Defendant regularly uses would involve opening over a thousand links and individually printing entries to PDF. *See* Ex. C (Moore Decl.) ¶¶ 11–14.

Plaintiffs' arguments for why they need all transaction data over three years also reflect a broader purpose Defendants warned would be at work—Plaintiffs are using what should be a narrowly focused process to try to obtain extensive merits discovery on several subjects before the arbitration to which Plaintiffs admit they must submit their claims. *See* Dkt. 23 (Defs.' Opp'n to Pls.' Mot. for Expedited Discovery) at 2, 7. For example, Plaintiffs claim that obtaining all historical transaction data is necessary to "fully understand Defendants' finances" and to "analyze Defendants mining activities fully." *See* Dkt. 40 at 6, 9. During arbitration, Plaintiffs will have the time and opportunity to further analyze different aspects of Defendants' business. But the standard for expedited discovery in advance of a preliminary injunction hearing should not be providing Plaintiffs with excruciatingly detailed information about all aspects of Defendants' operations.

3. **Plaintiffs' position on Mr. Jaimes' deposition is inconsistent with the Court's order and limitations Plaintiffs had proposed.**

Plaintiffs come back to Court seeking time with both Mr. Jaimes and Mr. Moore far exceeding the two-hour-per-deposition limitation that the Court deemed appropriate to manage the scope of discovery at this early stage. *See* Dkt. 25 at 6. While Plaintiffs now demand seven hours with Mr. Jaimes, the Court concluded that even *four*-hour depositions could allow Plaintiffs to

4

engage in "too-broad" discovery. *See id.* Defendants have offered Mr. Jaimes for a two-hour deposition this Friday, and Plaintiffs have indicated that they will proceed with that deposition, while reserving a claim to more time with Mr. Jaimes. But Plaintiffs' prospective arguments for why they will need five more hours suggest designs for an examination extending beyond the limited purpose of preparing for a potential preliminary injunction proceeding.

To start, Plaintiffs' suggestion that they requested this seven-hour deposition with Mr. Jaimes for the first time after the discovery period because they hoped to forgo this deposition altogether rings hollow. *See* Dkt. 40 at 6. Plaintiffs have sought to depose Defendants' accountants since the day they filed this case. *See* Dkt. 2 (TRO App.) at 30 ("In addition, as set forth in the attached draft Order, Plaintiffs request that the Court order Defendants to identify any and all accountants that they have retained (whether internally or externally) so that Plaintiffs can depose one or more of these individuals . . . ."); Dkt.2-1 (Proposed Ord.) ¶ 9 (proposing terms for this deposition). Within a week of the Court's order, Defendants identified their current and former accountants, including Mr. Jaimes. And NFN8's website, which Plaintiffs have repeatedly referenced, has identified Mr. Jaimes as NFN8's financial controller responsible for overseeing the company's financial operations during the entire pendency of this case.  Moreover, Plaintiffs were not—as they suggest in their motion—holding back on requesting Mr. Jaimes' deposition until they deposed Mr. Moore in hopes that the latter's deposition would eliminate the needs to depose Mr. Jaimes. *See* Dkt. 40 at 2.  Rather, Plaintiffs requested an accountant deposition (for the first time) on November 22, but they did not depose Mr. Moore until November 25.

Plaintiffs' arguments for why they now need seven hours with Mr. Jaimes reflects that they intend to venture beyond the parameters they had originally proposed with the TRO application referenced in the Court's order allowing expedited discovery. *See* Dkt. 25 at 2, 6 (citing Dkt. 2 at

5

29–30). The specific relief Plaintiffs incorporated in their TRO application limited the scope of any accountant deposition: "The scope of this discovery is limited to identifying the location of any money that is derived from, was made in connection with, or arose out of Defendants' alleged misconduct." *See* Dkt. 2-1 ¶ 9; Dkt. 2 at 30 (requesting this deposition "as set forth in the attached draft Order"). But Plaintiffs now preview a prolonged march through "the relevant financial statements and their idiosyncrasies and likely inaccuracies" in addition to other subjects. *See* Dkt. 40 at 9.

Plaintiffs delayed too long in requesting Mr. Jaimes' deposition and have now made clear that they do not intend to limit it to the scope of the original request referenced in the Court's order. Plaintiffs will have the opportunity to conduct more complete merits discovery in the arbitration that Plaintiffs know they will be compelled to undergo but are still trying to delay. But Plaintiffs should not be permitted to use this early, expedited discovery process to undertake extensive and burdensome merits discovery free of the limitations and tradeoffs that will be imposed in the merits phase during arbitration.

**4. Plaintiffs should not be granted additional deposition time with Mr. Moore.**

Plaintiffs' contention that they need more time because Mr. Moore did not adequately address Defendants' trading practices is inconsistent with the record and Plaintiffs' arguments elsewhere. First, and most importantly, Mr. Moore testified at length regarding Defendants' trading activities. Among other answers, Mr. Moore identified who at Defendants performs trading, including high-frequency trading; discussed how that high-frequency trading is performed; identified when Defendants began performing high-frequency trading; identified when the programs involved in Defendants' high-frequency trading were last refined; identified the coding languages and programs involved; identified the exchange on which Defendants engaged

6

in high-frequency trading; identified the exchange on which Defendants would typically purchase cryptocurrency; discussed the volume of his personal trading activity and how that compares with the high-frequency trading by other Defendants; identified a wallet used for mining and trading; provided his understanding of what constituted high-frequency trading; and described how that process could be automated as well as how often it had been performed in that way. *See, e.g.*, Ex. A (Moore Dep. Excerpts) 10:9–21; 12:12–15:15; 17:13–18:4; 23:17–24:22; 30:10–31:12; 78:20–79:18. Plaintiffs support their characterization of Mr. Moore's responses with a single citation to eleven lines from the transcript. *See* Dkt. 40 at 7 (citing with a "*see, e.g.*," signal Dkt. 41, Ex. S (Moore Dep. Excerpts) at 16:8–18). This presentation is made more misleading because Plaintiffs excerpted Mr. Moore's testimony without including the many other relevant responses on the same subject discussed above.

Nor can this argument by Plaintiffs about Mr. Moore's testimony be squared with Plaintiffs' opposition to Defendants' motion to compel discovery, wherein Plaintiffs maintain that testimony from their principals disclaiming any knowledge of a subject provided adequate information at this stage. *See* Dkt. 39 (Pls.' Opp'n) at 4–5; Dkt. 42 (Defs.' Reply) at 2–3 (citing Dkt. 43, Ex. A (Lo Rough Dep. Excerpts)). As shown above, Mr. Moore provided substantive responses to several lines of questioning by Plaintiffs regarding Defendants' trading activity. Plaintiffs cannot maintain that the deposition testimony of Mr. Moore about trading was so inadequate as to require additional document production and deposition time while simultaneously arguing that Dr. Lo's testimony disclaiming knowledge of how Plaintiffs' interests were accounted for at any point in time precluded the need for other discovery on their "accounting treatment" of these interests. *See id.*

7

Second, Plaintiffs' contention that they now need more time because they would have used time originally allowed to analyze Mr. Moore "extensively" regarding older personal wallet information suggests the sort of fishing expedition that the Court suspected four-hour depositions would permit. *See* Dkt. 40 at 7; Dkt. 25 at 6. Mr. Moore testified to infrequent use of his personal wallets. *See* Dkt. 41, Ex. S at 23:22–24:22. Plaintiffs have received discovery into Defendants'—including Mr. Moore's—bank accounts and cryptocurrency wallets but do not offer any evidence that extensive examination at deposition into Mr. Moore's personal trading activity would reveal information necessary to support their preliminary injunction position that Defendants' business was somehow illusory and operated as a Ponzi Scheme.

As to Plaintiffs' third argument, Plaintiffs spent roughly seven minutes examining Mr. Moore on what Mr. Moore ultimately identified as a block mining reward from which Defendants earned only a portion. *See* Dkt. 41, Ex. S at 53:13–58:1; Dkt. 40 at 8 (citing same). Mr. Moore noted that this alphanumeric identifier was longer than the others Defendants had provided, explained that the total value associated with this identifier was in excess of anything Defendants had received around that time, and concluded that he had probably copied the identifier for this reward by mistake from one of Defendants' wallets which may have received a portion in connection with Defendants' mining activities. *See id.* at 56:4–58:1.[4] Spending seven minutes

---

[4] Defendants take exception to the insinuation—made multiple times in Plaintiffs' motion—that the identification of this reward block as a public key was something other than a mistake. *See* Dkt. 40 at 8 ("[t]his purportedly mistaken identification"); *id.* at 10 ("a wallet Defendants now claim to have mistakenly identified"); *id.* at 7 (similar). Plaintiffs grouse throughout this and other papers about the pace with which Defendants provided voluminous and varied information within three weeks. Defendants disagree with Plaintiffs' characterizations of these facts. Plaintiffs do not, however, present a single fact supporting any suggestion of deliberate deception.

8

discussing this block reward does not entitle Plaintiffs to the additional hundred and twenty minutes that Plaintiffs had requested and that the Court denied. *See* Dkt. 25 at 6. [5]

Finally, even if the Court does grant Plaintiffs' other request for additional discovery, Plaintiffs' contemporaneous request for another full two-hour deposition should be denied. Plaintiffs have not shown that any new information they seek would contradict Mr. Moore's initial testimony or render it "incomplete or useless." *See Equal Emp. Opportunity Comm'n v. SkyWest Airlines, Inc.*, 2024 WL 1942124, at *4 (N.D. Tex. May 2, 2024) (noting that "[t]he court should not reopen a deposition unless the new information makes the deponent's initial deposition testimony 'incomplete or useless,' 'alter[ing] [it] in such a way as to directly contradict [the deponent's] prior testimony as to warrant further cross-examination.'"). And if the Court grants Plaintiffs any more time with Mr. Moore, the scope of Plaintiffs questioning should then be limited to any newly produced information. *See id.*

## Conclusion

For the forgoing reasons, the Court should deny Plaintiffs' request and allow the parties to proceed with what Defendants have provided and offered.

---

[5] Plaintiffs also could have realized for the same reasons—including the length of the identifier and very large size of the associated bitcoin block—that this identifier was likely provided in error.

Dated: December 4, 2024                               Respectfully submitted,


                                                      /s/ Christopher R.J. Pace

                                                      Christopher R.J. Pace
                                                      crjpace@winston.com
                                                      Texas State Bar No. 789534
                                                      Winston & Strawn LLP
                                                      2121 North Pearl Street, Suite 900
                                                      Dallas, TX 75201
                                                      Telephone: 214.453.6500
                                                      Facsimile:  214.453.6400

                                                      *Attorney for Defendants*

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 4th day of December, 2024, I caused the foregoing document to be electronically filed using the CM/ECF system, which automatically sends notification of such filing to all counsel of record.

                                          /s/ Christopher R.J. Pace
                                          Christopher R.J. Pace