IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MOBILE MED WORK HEALTH SOLUTIONS, INC., et al., | § § § § § § § § § § § | |
| Plaintiffs, | | |
| v. | | 1:24-CV-1219-RP |
| JOSHUA MOORE, et al., | | |
| Defendants. | | |

**ORDER**

Before the Court are Defendants Joshua Moore, Cory Rodriguez, NFN8 Group, Inc., NFN8 Holdings, LLC, NFN8 Capital, LLC, NFN8 Media, LLC, NFN8 Foundation, Cryptotech Holdings, LLC's ("Defendants") Motion to Compel Discovery, (Dkt. 38), and Plaintiffs Mobile Med Work Health Solutions, Inc., JLL Ventures, Inc., and M-M WHS LLC's ("Plaintiffs") Motion to Compel Discovery, (Dkt. 40). After considering the parties' briefs, the record, and the relevant law, the Court will grant Defendants' motion to compel discovery, and will grant in part and denies in part Plaintiffs' motion to compel discovery.

**I. BACKGROUND**

Plaintiffs allege that Defendants Joshua Moore ("Moore"), Cory Rodriguez ("Rodriguez"), NFN8 Group, Inc., NFN8 Holdings, LLC, NFN8 Capital, LLC, NFN8 Media, LLC, NFN8 Foundation, and Cryptotech Holdings, LLC (collectively, "Defendants") fraudulently induced them to invest over $10 million in nine separate sale-leaseback transactions by which Plaintiffs purchased cryptocurrency mining machines ("miners") from Defendants, then leased those miners back to Defendants in exchange for the proceeds that Defendants would generate from the mining activity. (Mot. TRO, Dkt. 2, at 4). According to Plaintiffs, Defendants used false promises to convince Plaintiffs to invest substantial sums of money into buying miners, then failed to use that money as

1

agreed. (*Id.* at 11). Defendants began defaulting on their promised payments to Plaintiffs in mid-2024. (*Id.*). Since then, Plaintiffs have launched an investigation into Defendants' business, the results of which have given Plaintiffs reason to believe that Defendants are engaged in a "Ponzi scheme." (*Id.* at 20). Plaintiffs filed their complaint on October 10, 2024.

On the same day they filed their complaint, Plaintiffs filed a motion for a temporary restraining order ("TRO"), asking the Court to freeze Defendants' assets. (*Id.* at 2). According to Plaintiffs, this relief would prevent Defendants from dissipating assets that could be used to compensate Plaintiffs if they were to prevail. (*Id.*). Finding that Plaintiffs had not met their burden of showing irreparable harm or that the threatened injury outweighs the threatened harm to Defendants, the Court denied the TRO on October 11, 2024. (Order, Dkt. 10, at 4).

On October 25, 2024 Plaintiffs filed a motion for expedited discovery ahead of a preliminary injunction hearing. (Dkt. 20). The Court granted that motion in part and denied it in part, allowing for only the expedited discovery Plaintiffs proposed in their original motion for a TRO:

- Each side exchange five interrogatories and five requests for production;
- Each side select two witnesses for a two-hour deposition;
- Defendants identify any and all accountants they have retained (whether internally or externally) so that Plaintiffs can depose one or more of these individuals, with such depositions not to count against the two-witness total;
- Defendants identify all cryptocurrency wallets they hold or have held, including but not limited to all cryptocurrency wallets that hold or have held cryptocurrency keys for cryptocurrency mined by Defendants; and
- Defendants produce 36 months of bank statements for all Defendants.

(Order, Dkt. 25, at 6). The Court ordered the parties to complete preliminary discovery on or before November 22, 2024, and ordered Plaintiffs to file a motion for a preliminary injunction or a motion for further preliminary discovery on or before December 13, 2024.

Defendants filed their motion to compel discovery on November 19, 2024, asking the Court to order Plaintiffs to respond to their requests for production:

2

> REQUEST FOR PRODUCTION NO. 1: For the past 36 months to present, produce the following annual, and to the extent they exist, monthly and/or quarterly financial statements—indicating whether audited or unaudited—for Plaintiffs and PVC3: a. Profit and Loss and/or Income Statements b. Balance Sheets, and c. Statements of Cash Flows
>
> REQUEST FOR PRODUCTION NO. 2: For the past 36 months to present, produce all monthly (or, if only available quarterly, then quarterly) bank statements for Plaintiffs and PVC.

(Defs. Mot. Compel Disc., Dkt. 38, at 2).

Defendants argue that the documents are relevant because they should reflect: (1) how Plaintiffs have recorded and treated their investments in the sale-leaseback transactions at issue; (2) what investments, if any, Plaintiffs have made in similar or related transactions or businesses, which reveals Plaintiffs' sophistication as lessors, investors, or traders in digital assets; (3) how past payments from any Defendant to any Plaintiff have been distributed, which in turn will reveal what self-interest potential witnesses for Plaintiffs may have; (4) what funds PVC—a business entity half-owned by Plaintiff M-M—raised, how those were invested, and whether those investments are similar to Plaintiffs' transactions with one or more Defendants; and (5) what advisors Plaintiffs or PVC have retained and when they retained (or at least paid) such advisors. (*Id.* at 4–6). In response, Plaintiffs contend that the documents are neither relevant nor proportional to the needs of this case. (Pls. Resp. Mot. Compel Disc., Dkt. 39, at 1–2).

Plaintiffs also filed a motion to compel discovery on November 27, 2024, asking the Court to order Defendants:

> (1) To produce information identifying the additional cryptocurrency wallets Defendant Joshua Moore appears to have controlled, but which were not identified pursuant to the Court's Order requiring Expedited Discovery.
>
> (2) To produce documents responsive to Plaintiffs' Request for Production No. 5, which seeks production of documents sufficient to identify and show cryptocurrency receipt, trading, and liquidation

>history on any Defendant-owned or Defendant-controlled cryptocurrency exchange or platform account.
>
>(3) To produce NFN8 Controller/Accountant Fernando Jaimes for a deposition with no time limit other than Fed. R. Civ. P. 30(d)(1)'s seven-hour limit.
>
>(4) To produce Defendant Joshua Moore for an additional two-hour deposition in advance of the Court's December 13 deadline.

(Pls. Mot. Compel Disc., Dkt. 40, at 1–2). In turn, Defendants argue that Plaintiffs are merely seeking "more and broader discovery" on top of the discovery this Court has already granted. (Defs. Resp. Mot. Compel Disc., Dkt. 44, at 1).

## II. LEGAL STANDARD

The scope of discovery is broad. *Crosby v. La. Health Serv. and Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). Federal Rule of Civil Procedure 26 provides that, unless otherwise limited by court order, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). "A discovery request is relevant when the request seeks admissible evidence or 'is reasonably calculated to lead to the discovery of admissible evidence.'" *Crosby*, 647 F.3d at 262 (quoting *Wiwa v. Royal Dutch Petrol. Co.*, 392 F.3d 812, 820 (5th Cir. 2004)). A party seeking discovery may file a motion to compel after conferring in good faith to secure that discovery without court action. Fed. R. Civ. P. 37(a). If the motion is filed and granted, the Court must order the resisting party to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. Fed. R. Civ. P. 37(a)(5).

"Once a party moving to compel discovery establishes that the materials and information it seeks are relevant or will lead to the discovery of admissible evidence, the burden rests upon the party resisting discovery to substantiate its objections." *Hobbs v. Petroplex Pipe & Constr., Inc.*, No. MO:17-CV-00030-DC, 2018 WL 3603074, at *2 (W.D. Tex. Jan. 29, 2018); *see also McLeod, Alexander, Powel and Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). "A party objecting to discovery must state with specificity the objection and how it relates to the particular request being opposed, and not merely that it is overly broad and burdensome or oppressive or vexatious or not reasonably calculated to lead to the discovery of admissible evidence." *Id.*; *see also Carr v. State Farm Mut. Auto. Ins.*, 312 F.R.D. 459, 469 (N.D. Tex. 2015) (stating that the party resisting discovery has the burden to "specifically object") (citing *McLeod*, 894 F.2d at 1485).

## III. DISCUSSION

### A. Defendants' Motion to Compel Discovery

The Court finds the materials Defendants seek to be relevant and proportional to the needs of the case. Relevancy is an expansive concept in discovery: "[A]t the discovery stage, the "threshold for relevance . . . is lower than at the trial stage." *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011). Relevancy is thus to be "construed liberally to reach 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 623 F. Supp.2d 798, 838 (S.D. Tex. 2019) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

The Court agrees with Defendants that the documents could reflect what investments, if any, Plaintiffs have made in similar or related transactions or businesses. That could be relevant to understanding and assessing the sophistication of Plaintiffs as lessors, investors, or traders in digital assets, which in turn reflects their knowledge of the risks associated with such digital assets and digital asset businesses. Defendants cite cases suggesting that Plaintiffs' ignorance of a known or

5

obvious risk could limit their fraud recovery. (*See* Defs. Mot. Compel Disc., Dkt. 38, at 4) (citing *In re Briese*, 196 B.R. 440, 454 (W.D. Wisc. Bk. 1996)). Although the Court declines to address the merits of that argument now, the Court concludes that Defendants have shown enough relevance at this early stage of litigation to warrant granting the motion to compel discovery.

Furthermore, the Court finds Defendants' discovery request proportional to the needs of the case. In granting Plaintiffs' motion for expedited discovery, the Court relied on Plaintiffs' arguments that their requests were "targeted," "narrowly tailored," and could be produced quickly and easily. (*See* Pls. Reply Mot. Expedited Discovery, Dkt. 24, at 2, 3). Now, Defendants seek similar documents from Plaintiffs. Plaintiffs' arguments in support of their discovery requests should apply here too. Accordingly, the Court grants Defendants' motion to compel discovery.

### A. Plaintiffs' Motion to Compel Discovery

First, the Court will order Moore to produce the public keys for the wallets in which he traded cryptocurrency if he is able to obtain the public keys for these wallets from the cryptocurrency exchange. In his deposition, Moore suggested there may be older public keys previously assigned to his account that were not provided to Plaintiffs per the Court's expedited-discovery order. (Pls. Mot. Compel Discovery, Dkt. 40, at 4; Defs. Resp. Pls. Mot. Compel Disc., Dkt. 44, at 2). After that deposition, Moore reached out to that platform to ask whether it could identify previous public keys associated with his account. (Defs. Resp. Pls. Mot. Compel Disc., Dkt. 44, at 2). He was advised that his account manager would "see what can be done" and that this manager's internal inquiry would require assistance from another team. (*Id.*). Moore has yet to receive any further update. (*Id.*). Defendants therefore argue that the information is not in their possession, custody, or control, and the Court cannot compel Defendants to provide it. *See Horton v. Texas Fed'n for Child. Pac, Inc.*, 2024 WL 68572, at *6 (N.D. Tex. Jan. 5, 2024) (citing Fed. R. Civ. P. 34(a))

"Rule 34's definition of possession, custody, or control, includes more than actual possession or control of documents; it also contemplates a party's legal right or practical ability to obtain documents from a non-party to the action." *Duarte v. St. Paul Fire & Marine Ins. Co.*, 2015 WL 7709433, at *5 (W.D. Tex. Sept. 25, 2015) (cleaned up); *Bramante v. McClain*, 2007 WL 196916, at *2 (W.D. Tex. Jan. 16, 2007) (same). Parties must conduct "a reasonable search of all sources reasonably likely to contain responsive documents." *Duarte*, 2015 WL 7709433, at *5 (quotation omitted). As the cryptocurrency account holder, Moore has control over the wallet information because he has the practical ability to obtain his own account information. *Bramante*, 2007 WL 196916, at *2. Moore has already shown that he can request the release of the public keys from the exchange, and what remains to be seen is whether the exchange has retained and will provide those records to Moore. Because Moore has the practical ability to obtain the wallet information, the Court finds it appropriate to order Moore to produce the information if it is available.

Second, the Court will order Defendants to produce documents sufficient to identify and show cryptocurrency receipt, trading, and liquidation history on any Defendant-owned or Defendant-controlled cryptocurrency exchange or platform account. Plaintiffs argue that the documents are necessary because the wallet information and financial data and documents Defendants have already produced "raise far more questions than they answer." (Pls. Mot. Compel Disc., Dkt. 40, at 4–5). They specifically argue that the wallets and financial disclosures contain no information from which Plaintiffs can reliably determine what happened to Defendants' cryptocurrency after they received it, and no information allowing Plaintiffs to identify and analyze Defendants' trading activities. The Court finds that this information is relevant and proportional to a preliminary injunction motion and will grant Plaintiffs' motion to compel discovery.

Third, the Court grants in part and denies in part Plaintiffs' request to conduct a full seven-hour deposition of NFN8 Controller/Accountant Fernando Jaimes. Plaintiffs argue that this

7

deposition is necessary because of the "confusing and idiosyncratic nature of [Defendants'] financial statements" and the "opacity of Defendants' banking practices." (*Id.* at 5–6). The Court previously allowed Plaintiffs to take a deposition of Defendants' accountant while denying Plaintiffs' request to take four-hour depositions of Moore and Rodriguez. (Order, Dkt. 25, at 6). The Court limited Moore and Rodriguez's depositions to two hours, explaining that "too-broad discovery could allow Plaintiffs to engage in a fishing expedition." (*Id.*). Though these concerns are still present here, the Court recognizes that the complexity of the case warrants granting Plaintiffs an additional opportunity to gain insight into Defendants' financials. Accordingly, the Court finds it appropriate to grant Plaintiffs a four-hour deposition of Fernando Jaimes. Because Jaimes has already sat for a two-hour deposition on December 6, (Pls. Reply Mot. Compel Disc., Dkt. 49, at 6), the Court will grant Plaintiff another two-hour deposition of Jaimes.

Fourth, the Court will grant Plaintiffs' motion to take an additional two-hour deposition of Moore. Plaintiffs claims that Defendants provided them with incomplete cryptocurrency-wallet information ahead of their first deposition with Moore. (Pls. Mot. Compel Disc., Dkt. 40, at 7). Additionally, Defendants have refused to provide Plaintiffs with exchange information, which the Court now orders Defendants to provide. (*See id.*). Plaintiffs argue that if Defendants had provided this information ahead of the deposition, they could have examined Moore in a more targeted manner. (*Id.*). The Court agrees that another deposition of Moore is reasonable in light of the additional discovery the Court is now granting. Plaintiffs have requested that this deposition take place before the Court's December 13 deadline for Plaintiffs to file a motion for a preliminary injunction. Because it may take additional time to coordinate the parties' schedules, the Court declines to impose that deadline on Defendants.

Plaintiffs' deadline to file a motion for a preliminary injunction is December 13. The Court recognizes that today's rulings allowing both parties to take additional discovery may impact the

motion and related briefing. To the extent that Plaintiffs require more time to submit the motion, the Court will consider an appropriate motion to extend the deadline. Should they do so, the parties are encouraged to confer and present to the Court a joint proposed briefing schedule.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that, in accordance with this Order, Defendants' Motion to Compel Discovery, (Dkt. 38), is **GRANTED**, and Plaintiffs' Motion to Compel Discovery, (Dkt. 40), is **GRANTED IN PART** and **DENIED IN PART**. As to Plaintiffs' Motion to Compel Discovery, (Dkt. 40), the Court orders Defendants to (1) produce information identifying the additional cryptocurrency wallets Moore appears to have controlled, but which were not identified pursuant to the Court's Order requiring Expedited Discovery, if that information is available; (2) produce documents responsive to Plaintiffs' Request for Production No. 5, which seeks production of documents sufficient to identify and show cryptocurrency receipt, trading, and liquidation history on any Defendant-owned or Defendant-controlled cryptocurrency exchange or platform account; (3) produce NFN8 Controller/Accountant Fernando Jaimes for a two-hour deposition; and (4) produce Moore for an additional two-hour deposition.

**SIGNED** on December 12, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE